Martha V. GILBERT et al., Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, Defendant.

Civ. A. No. 142-72-R.

United States District Court, E. D. Virginia, Richmond Division.

April 30, 1973.

See also, D.C., 59 F.R.D. 273.

268

Seymour Dubow, Richmond, Va., Ruth Weyand, Associate Gen. Counsel, International Union of Electrical, Radio and Machine Workers, AFL–CIO and CLC, Washington, D. C., for plaintiffs.

John S. Battle, Jr. and Robert H. Patterson, Jr., Richmond, Va., Stanley R. Straus, Vedder, Price, Kaufman & Kammholz, Washington, D. C., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff female employees of defendant General Electric Company (GE) seek class relief from alleged sex employment discrimination practices by the defendant in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The employment practice complained of is GE's denial of sickness and disability benefits to employees absent because of pregnancy. The history of this litigation, which does not appear to be as complex as might be inferred from the amount of pleadings and other documents contained in the file, has been recited in previous memoranda of the Court and need not be repeated here. See memoranda of September 25, 1972, D.C., 347 F.Supp. 1058, and February 6, 1973. The parties are again before the Court prior to trial pursuant to three motions:

1) Plaintiffs' motion to dismiss GE's counterclaim.

2) GE's motion for definition of size of class, designation of class representatives and issuance of notice to class members.

3) Plaintiff's motion to add parties plaintiff.

Counsel have briefed their respective positions, and it is upon the memoranda and records before it that the Court finds these matters ready for disposition. The motions and issues raised with respect to each shall be considered in turn.

I. Motion to Dismiss the Counterclaim

GE's counterclaim reads as follows:

1. The non-occupational sickness and accident insurance referred to in the complaint is made applicable and available to GE employees within the collective bargaining units represented by plaintiff International Union and its affiliated IUE (AFL–CIO) Locals[1] pursuant to, and solely as the result of, a negotiated Pension and Insurance Agreement between GE and plaintiff International Union and its affiliated IUE (AFL–CIO) Locals, including plaintiff Local 161, which was signed February 4, 1970, and by its terms is effective until May 26, 1973. Such Pension and Insurance Agreement provides that non-occupational sickness and accident benefit payments are not payable for any absence due to pregnancy or childbirth or to complications in connection therewith.

2. GE's failure to pay non-occupational sickness and accident benefits to GE employees within collective bargaining units represented by plaintiff International Union and plaintiff Local 161 for absences due to pregnancy or childbirth or to complications in connection therewith, has been in accordance with the terms and provisions of the aforesaid Pension and Insurance Agreement. If such failure by GE is unlawful, complete and appropriate relief therefore under Section 706(g) of Title VII of the Civil Rights Act of 1964 as amended, can be obtained only if directed against plaintiff labor organizations as well as GE.

3. In the event that GE is held to be liable in damages or otherwise for acts or omissions alleged in the complaint and effected pursuant to and in accordance with the aforesaid Pension and Insurance Agreement signed on February 4, 1970, GE asserts a right of contribution from, and indemnification by, plaintiff International Union and plaintiff Local 161 in respect to any such liability.

[1]. The named plaintiffs to this action include the International Union of Electrical, Radio and Machine Workers, AFL CIO and Local 161 of said union.

The Union's first asserted ground in support of its motion is the failure of GE to allege that the unions have engaged in any unlawful employment practice or caused GE to do so. The unions argue that said failure is fatal to the counterclaim because

> If any right of contribution or indemnification against a counterdefendant ever exists under Title VII, it must obviously be based on some finding that there was either a violation of Title VII by the counterdefendant or that the counterdefendant could or attempted to cause the counterplaintiff to commit an unlawful employment practice.

The unions further urge that being a signatory to a collective bargaining agreement which contains a discriminatory provision is not violation of Title VII and that further, the unions have labored since February, 1972 to alter the contract provisions in question when the law on this matter "became clear."

GE disputes that the unions made a good faith effort to alter the pregnancy benefit portions of the contracts in question and cite case law in support of its position that being a signatory to a contract with discriminatory provisions may render a union liable on counterclaims for contribution by a defendant employer.

Blanton v. Southern Bell Telephone & Telegraph Company, 49 F.R.D. 162 (N. D.Ga.1970), cited by GE, is a well-reasoned decision closely on point. Plaintiffs in *Blanton* included female employees, who alleged employment discrimination on the basis of sex, and the union to which they belonged. Southern Bell filed a counterclaim against the union alleging that challenged provisions in the employment contract evolved from free and open bargaining sessions between the union and Southern Bell and that therefore, if any said provisions were found illegally discriminatory then the union was equally responsible. That shared responsibility was urged as the basis for a claim for contribution in case plaintiffs were to recover. The union, as here, moved to dismiss on the ground that the counterclaim was jurisdictionally defective by virtue of Southern Bell's failure to raise same before the EEOC pursuant to 42 U.S.C. § 2000e–5(e). The *Blanton* court dismissed this contention finding that the counterclaim "appears to be in the nature of a claim against a joint tortfeasor rather than a claim under the Civil Right Act." 49 F.R.D. at 163. Though doubting the ultimate viability of the counterclaim, the court concluded that for purpose of Rule 13, F.R.Civ.P., a proper counterclaim was stated. See also Osborne v. McCall Printing Co., 4 FEP Cases 276 (S.D. Ohio 1972). It is conceivable, of course, that a counterclaim may be brought either under theories of tort law or Title VII or both. While the court does not embrace the seemingly restrictive view of *Blanton,* it does concur that a claim in tort is colorable.

■ This view, that a union freely a party to a negotiated contract with illegal provisions may potentially be held liable as a joint tortfeasor upon a counterclaim, is tacitly accepted as well by the District Court in Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332, 358 (S. D.Ind.1967), mod on other grounds, 416 F.2d 711, 719 (7th Cir. 1969).[2] *Bowe,* however, adds that a change in the law, occurring after the date of the contract signing, which renders portions of the contract illegal will free a union from liability if efforts were made by the union to alter the effect or stop the implementation of the challenged provisions from the time the law became clear. See

---

2. On appeal, the United States Court of Appeals for the Seventh Circuit viewed the claim against the union as one brought under Title VII. Because Title VII procedures were not complied with, the Court of Appeals affirmed the District Court's dismissal of the claim.

also EEOC Dec. No. 70–112, 2 EPG ¶ 6108 (9/5/69).

Against these principles of law, which the Court for these purposes adopts as appropriate interpretations, the respective parties here have set forth conflicting factual allegations. The plaintiff unions allege that 1) the contract provisions complained of were not the result of free negotiations,[3] 2) since the issuance of EEOC Decision No. 71–1471, 3 EPG Par. 6221, 3F EP Cases 588 (3/19/71) holding that disparate treatment of pregnancy related inabilities constituted sex discrimination, the unions have consistently sought to recover sickness and accident benefits for pregnant employees. GE denies both allegations, citing particularly "real" negotiations in 1969–70 for the 1970–1973 GE–IUE Pension and Insurance Agreement. GE further avers that it was under no obligation to respond to a February, 1972 union proposal to change the disputed provisions by virtue of Section 8(d) of the National Labor Relations Act, as amended 29 U.S.C. § 158(d), which provides that neither party need discuss or agree to contract modifications to become effective before the contract terms or questions can be reopened under the contract.

■ The proper issue, in the Court's view, is whether or not the union sought to gain for its members relief from the disputed pregnancy benefits clauses at the time the law became clear. *Bowe, supra.* In so stating, the Court is aware that the law under Title VII has been quickly evolving. To gain ultimate recovery under a theory of Tort liability, it would appear that the union need

show that at the time of the 1970 negotiations the union was aware that the disputed contract provisions were illegal but freely agreed to them. This showing, in turn, would necessitate proof by GE that:

1) The terms are in fact illegal.

2) The terms were illegal in 1970, or that the unions did not act to alter or prevent their implementation at the time knowledge of their illegality was acquired.

3) The above malfeasance, if existent, states a claim for which relief can be granted.[4]

Though these factual issues may well be determinable upon the voluminous record before it, the Court, at this late stage, chooses not to exercise its discretion under Rule 12(c), F.R.C.P., to construe the present motion to dismiss as a motion for judgment on the pleadings and to search the record thereby to determine these issues. The Court is hopeful, however, that evidence at trial will be offered in a manner consistent with these views.

The union's further grounds in support of its motion to dismiss the counterclaim have been dealt with, *inter alia,* in the foregoing discussion. The second ground asserts that the counterclaim does not state a course of action for which relief may be granted. In view of *Blanton, supra,* and *Bowe, supra,* the court is disinclined to accept this view but reserves its ultimate decision pending appropriate memoranda or argument at trial.[5]

■■ The third ground asserted is that a claim for contribution is not ripe

---

3. The union in support of this allegation cited coercive bargaining techniques utilized by GE and reprimanded in NLRB Proceedings in Gen. Electric Company, 150 NLRB 192, 207, 209, 237, 258, 271 (1963–69) enforced NCRB v. Gen. Elec., 418 F.2d 736 (2nd Cir. 1969).

4. The union urges that no such claim exists under federal common law. With-

out prejudging the matter, said claim may exist under state law, over which the Court may choose to take pendent jurisdiction, or in fact in federal law, over which the Court may choose to take ancillary jurisdiction.

5. With time short before trial of this action, the Court will not now direct memoranda on this issue.

at this stage and therefore not presently justiciable. This Court has previously rejected this reasoning in connection with a third party claim, ruling that a claim for contribution is "ripe" and permissible under Rule 14, F.R.C.P. Bell v. Federal Reserve Bank, 57 F.R.D. 632 (E.D.Va.1972). That rationale is applicable here: The liberal spirit of the Federal Rules mandate avoidance of duplicative litigation. The Court will therefore allow GE to maintain its counterclaim in tort pursuant to Rule 13, F. R.C.P.

■ The final grounds asserted essentially aver that the counterclaim is jurisdictionally barred by the absence of proper EEOC proceedings against the unions pursuant to 42 U.S.C. §§ 2000e–5(e) and 5(f)(1). These contentions are well taken. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969). GE may not maintain this counterclaim upon the theory of Title VII violations.

The Court will, however, allow GE to pursue its claim under a theory of tort liability conditioned on a proper showing in accordance with the aforementioned principles. At this stage, therefore, the union's motion to dismiss the counterclaim shall be denied.

II. Motions with Respect to Class

General Electric moves for an order defining plaintiff class as consisting of either:

(a) those similarly situated female employees employed at defendant's Salem, Virginia plant who, during the period commencing ninety days prior to a date in December 1971 or January 1972 (the earliest date on which any of the charges of discrimination was filed) and ending on the date of the filing of the complaint, were denied non-occupational sickness and accident insurance benefits for absences from employment due to pregnancy or resulting childbirth; or

(b) those similarly situated female employees employed at GE's plants who are represented for purposes of collective bargaining by plaintiff International Union and its affiliated IUE (AFL–CIO) Locals, and who, during the period commencing ninety days prior to a date in December 1971 or January 1972 and ending on the date of the filing of the complaint, were denied non-occupational sickness and accident insurance benefits for absences from employment due to pregnancy or resulting childbirth.

Plaintiffs, on the other hand, pray for a two part class definition with respect to declaratory relief, a class is sought to include:

All females who are now or have been employed by the defendant GE on or after September 14, 1971, or who became employed by defendant GE during the pendency of this suit, at any of its plants, offices and shops wherever located and also all females whose claims or grievances against the defendant GE for sickness or accident benefits for a period of disability due to childbirth or other pregnancy related disability were filed before September 17, 1971 and were still pending on September 14, 1971 or could still be timely filed on or after September 19, 1971.

With respect to monetary relief, a sub-class is sought to include all those in the above class who become disabled from work by reason of pregnancy or who filed claims with respect to pregnancy with GE. The first class would member approximately 100,000 employees, the sub-class, 5659 employees.

■■ The Court has little difficulty with this issue, concluding that plaintiffs' position is well-taken.

The four requisites set out in Rule 23(a), F.R.C.P., require 1) that the class be so numerous that joinder of all members is impractical. Since GE allegedly has 100,000 female employees, the number of women workers with a stake

in the outcome of this litigation is obviously large enough to meet this criterion; 2) that there are questions of law or fact common to the class. All GE employees, whether represented by unions or not, are covered by the General Electric Insurance Plan with Comprehensive Medical Expense Benefits, as amended January 16, 1970. The pregnancy benefit exclusion applies equally to all women employees. Further, because GE insists upon a uniform policy, the major unions representing GE workers have since 1965 established a coordinated bargaining committee whereby those unions choosing to participate formulate common demands in this regard. It is therefore clear that questions of law and fact raised here by the named plaintiffs are common to the entire class. By virtue of these facts, it is likewise clear that the third condition, that 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class. Finally, the Court is satisfied that 4) the parties will fairly and adequately protect the interest of the class. In short, it would be difficult to conceive of a class more appropriate under Rule 23 than that proposed by plaintiffs. These considerations apply as well to the sub-class seeking monetary relief. Plaintiffs assert that the class should accrue from September 14, 1971. GE proffers that the proper date should be measured at 90 days prior to the earliest date of filing of charges with the EEOC by a class representative. Diaz v. Pan American World Airways, 346 F.Supp. 1301 (S.D.Fla.1972). Plaintiff Barbara Hall filed with the EEOC on December 13, 1971. Plaintiffs proffered accrual date of September 14, 1971 is therefore in accord with defendants position and the law on the subject and will be adopted by the Court.

As a final matter, the Court will designate the original named personal plaintiffs, excluding the unions and named plaintiffs to the amended complaint, as the class representatives.

Because of the preceding adjudication with respect to the class, addition of further named plaintiffs to this action is unnecessary. Plaintiff's motion in this regard shall be denied.

An appropriate order shall enter. It will, *inter alia,* direct that counsel meet to confer with the Court to establish appropriate procedures for providing notice to the class pursuant to Rule 23(d)(2).