**Judith GROGG et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 73 Civ. 63 (KTD).**

United States District Court, S. D. New York.

Aug. 17, 1976.

Vladeck, Elias, Vladeck & Lewis, P.C., New York City, for plaintiffs; Stephen C. Vladeck, Irving Abramson, Ruth Weyand, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant; Martin Kleinbard, Anthony M. Radice, Richard A. Miller, New York City, Frazer F. Hilder, Edmond Dilworth, Jr., General Motors Corp., Detroit, Mich., of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

This is an action by several individual female employees of General Motors Corp. ("GM") and by the International Union of Electrical Radio and Machine workers, AFL–CIO–CLC, ("IUE") and its locals which represent the individuals against GM for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiffs claim that the provisions of GM's employee disability benefit program offend Title VII in the following three respects. First, payments for disabilities arising from pregnancy or childbirth are limited to six weeks; whereas, other disabilities are compensated for by 52 weeks of disability payments. Second, GM has or had a mandatory unpaid leave requirement for women seven months pregnant. Third, defendant allegedly refuses to pay sickness and accident benefits to female employees who are disabled as a result of surgical sterilization.

The defendant has moved (1) to dismiss the action as a class action or (2) for definition of the class and (3) to amend its answer to assert an affirmative defense and a counterclaim against the plaintiff Union and its locals.

Because the outcome of the motion to amend the answer will have an impact on the issues raised by the "class" motions, I will dispose of the motion to amend first. The proposed amended answer includes an affirmative defense of "good faith" based in part on section 713(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–12(b), which provides in pertinent part:

"In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission, . . . .. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that (A) after such act or omission, such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect . . . .."

Defendant claims that it relied on certain opinion letters issued by the EEOC in 1966. It also claims reliance on state disability laws, see, e. g., N.Y. Workmen's Comp.Law, § 205(3) (McKinney 1965).

Plaintiffs oppose this defense both on its theory and on the facts. They argue that intent need not be an element of the offense charged. See *Kober v. Westinghouse Elec. Corp.*, 325 F.Supp. 467 (W.D.Pa.1971), aff'd, 480 F.2d 240 (3d Cir. 1973). Moreover, they challenge the relevance and weight of, as well as defendant's right to rely on, the 1966 opinions. See CCHEPG § 17.304.43 (one of the letters allegedly relied on); 35 Fed.Reg. 238 (Dec. 9, 1970) (an EEOC policy statement narrowing the definition of a "written interpretation or opinion of the Commission" for purposes of

§ 713(b)); EEOC Decision 71–1474, 3 EPG ¶ 6221, 3 FEP 588 (Mar. 19, 1971) (describing the treatment of pregnancy as a sickness for purposes of sickness and accident benefits).

█ Plaintiffs' arguments appear to me to be addressed to the merits of the defense and accordingly are not relevant on this motion. *Nyscoseal, Inc. v. Parke, Davis & Co.*, 28 F.R.D. 24 (S.D.N.Y.1961). Although an amendment may be denied if the matter sought to be asserted is clearly frivolous, I cannot say at this time that such is the case here. See *Reines Distributors, Inc. v. Admiral Corp.*, 39 F.R.D. 39 (S.D.N.Y. 1963). While defendant may have a heavy burden on the proof of this defense, I will not foreclose the opportunity at this time. Therefore, in accordance with Rule 15(a), Fed.R.Civ.P., and its policy favoring liberality in the amendment of pleadings, the motion to amend the answer to assert an affirmative defense is granted. See *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The second amendment for which leave is sought relates to a proposed counterclaim against the plaintiff Union. Rule 13(f), Fed.R.Civ.P. The gist of the counterclaim is that if the defendant is found liable for money damages, it seeks indemnification or contribution from the Union as co-signator of the collective bargaining agreement which contains the allegedly unlawful health insurance provisions.

█ Plaintiffs oppose this amendment on several grounds. Arguing the facts of the case, plaintiffs maintain that it is beyond dispute that the plaintiff unions sought an end to defendant's alleged discrimination. Thus, they argue, the unions cannot be held liable for merely signing a collective bargaining agreement containing provisions they were unable to defeat. See EEOC Decision No. 70–112, CCH EPG ¶ 6108 (Jan. 19, 1970). This argument goes directly to the merits of defendant's proposed counterclaim and is not properly before me on this motion. See *Nyscoseal, Inc. v. Parke, Davis & Co.*, 28 F.R.D. 24 (S.D.N.Y.1961).

Plaintiffs also argue that if the counterclaim is asserted under Title VII (1) the statute does not provide for contribution and (2) the counterclaim is jurisdictionally defective for failure of the defendant to file a claim with the EEOC, 42 U.S.C. §§ 2000e–5(e), 2000e–5(f)(1). On the other hand, if the counterclaim is premised on a joint tortfeasor theory of liability, plaintiffs argue that no such liability exists on the facts or the law. Finally, plaintiffs argue that any claim by defendant for indemnification is not yet ripe since defendant's liability has not yet been determined.

■ There is ample authority to the effect that a counterclaim of the type proposed by defendant may be asserted. See, e. g., *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78 (S.D.N.Y.1973); *Gilbert v. General Electric Co.*, 59 F.R.D. 267 (E.D.Va.1973); *AFL–CIO v. Illinois Bell Telephone Co.*, 73 C 959 (N.D.Ill., Oct. 25, 1973); *Blanton v. Southern Bell Telephone & Telegraph Co.*, 49 F.R.D. 162 (N.D.Ga.1970); *Bowe v. Colgate Palmolive Co.*, 272 F.Supp. 332 (S.D. Ind.1967), modified on other grounds, 416 F.2d 711 (7th Cir. 1969). See also, *Evans v. Sheraton Park Hotel*, 164 U.S.App.D.C. 86, 503 F.2d 177 (1974); *Myers v. Gilman Paper Co.*, 392 F.Supp. 413 (S.D.Ga.1975). The counterclaims asserted in *Gilbert* and *AFL–CIO* were, apparently, almost identical to that proposed by this motion. In fact ¶ 24 of plaintiffs' complaint suggests that the plaintiff union and its locals may be subject to suit by female employees for failure to correct the allegedly unlawful insurance program which limits pregnancy and childbirth disability benefits to six weeks.

Although *Gilbert, Bowe* and *Blanton* found that a failure to file EEOC charges against the union precluded a counterclaim on a Title VII theory, *Gilbert, Lynch* and *Blanton* all endorsed the alternative joint tortfeasor theory of liability. On the other hand, the court in *AFL–CIO* found the defendant's failure to file EEOC charges not to be a bar to a Title VII counterclaim since such a filing would be duplicative of plaintiff's original filing.[1] And in fact, according to the complaint, one of the plaintiff locals of IUE did file charges with EEOC against GM alleging discrimination in the non-payment of pregnancy or childbirth benefits in excess of six weeks. Moreover, the union and its locals have availed themselves of this forum as plaintiffs.

■ Finally, the challenge to the proposed counterclaim on the grounds that it has not ripened is rejected for the reasons so well expressed in both the *Lynch* and *Gilbert* cases. In fact, plaintiffs were put on notice by defendant's original answer that part of the defense would be the Union's participation in the formulation of and their ratification of the acts and policies complained of. Thus, according to defendant, plaintiffs can not claim any surprise by the amendment. Moreover, defendant argues that its failure to assert the counterclaim in the original answer is excusable within Rule 13(f), Fed.R.Civ.P., since the law on such counterclaims was developing at the time of their answer and has since been significantly clarified.

For all of the above reasons the motion to amend the answer to assert a counterclaim is granted.

The next set of motions relate to the existence, scope, and representatives of the plaintiff class.

Defendants have moved to dismiss the action as a class action or for definition of the class. Plaintiffs urge a definition of a primary class which would essentially cover all female employees of General Motors

---

1. See *DeFigueiredo v. TransWorld Airlines, Inc.*, 322 F.Supp. 1384 (S.D.N.Y.1974). See also *Evans v. Sheraton Park Hotel*, supra; *Waters v. Wisconsin Steel Works of Int'l Harvester*, 427 F.2d 476 (7th Cir.), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

However, the court in *AFL–CIO* found that no common law right to indemnification exists in a case of this type since defendant's alleged violation is purely statutory. But see *Lynch, Gilbert*, and *Blanton*, supra. Plaintiffs attempt to distinguish *Lynch* on the grounds that there the offending contract provisions were truly negotiated by the union; whereas here they were allegedly mandated by the employer. While this distinction may have merit, it is a fact question which must await the proof at trial.

from July 1, 1965 throughout the pendency of this action. Plaintiffs also suggest 3 subclasses to correspond with each count in the complaint. Rule 23(c)(4)(B), Fed.R. Civ.P.

The primary class suggested by plaintiffs would include all female employees of GM from July 1, 1965 throughout the pendency of this action. Although plaintiffs offer no explanation of the 1965 date which I can find, it appears to be the approximate effective date of Title VII. Defendants suggest this explanation of the 1965 date and apparently have no objection to its application to the primary class. From this class plaintiffs would scoop out the various subclasses. However, as discussed below, the statute contains specific provisions for defining proper plaintiffs under the Act. 42 U.S.C. § 2000e–5(e), (f). These provisions have been applied, albeit differently, by the various parties to the definition of the subclasses. Even under the plaintiffs' interpretation none of the subclasses would extend back to 1965.

■ I can see no reason to define a primary class which exceeds in scope all of the subclasses taken collectively. Such a definition would result in a primary class, members of which would be entitled to no relief. While as a practical matter injunctive relief, if granted, may ultimately benefit all female employees of GM, that is insufficient reason to expand the scope of the class beyond those statutorily entitled to be plaintiffs herein. Therefore any primary class will be limited to those fitting into one of the subclasses discussed below. See *Burwell v. Eastern Airlines, Inc.,* 68 F.R.D. 495 (E.D.Va.1975)

The defendant's position is that the class fails to satisfy the requirements of Rule 23(a) for lack of adequate class representatives. Rule 23(a)(3) and (4). Defendant maintains that the union plaintiffs would be inadequate class representatives both because of their potential liability on the counterclaim permitted by the first portion of this opinion and because of possible conflicts between the wishes of their female members and male members.

Plaintiffs, while strongly opposing both the assertion of and the merits of the counterclaim, respond that the unions do not seek designation as class representatives. Rather they suggest that the individual employees named in the complaint be designated as the class representatives. These individuals, it is claimed, have filed with the appropriate agencies and their claims and defenses are typical of those of the class. Rule 23(a)(3), Fed.R.Civ.P. I find this argument to be supported by the facts and affidavits before me.

Nevertheless, defendant raises the question of these representatives' ability to fairly and adequately protect the interests of the class Rule 23(a)(4), Fed.R.Civ.P. since they share their attorneys with the union plaintiffs. Moreover, two of the attorneys are General Counsel and Associate Counsel to IUE and a third is former General Counsel to IUE who, while now in private practice, occasionally represents the union as special counsel. The final set of attorneys for plaintiff are a law firm which is apparently unrelated to the union although it has represented the union in unrelated matters in the past. The defendant's theory is that the individuals are merely nominal plaintiffs who have been selected by and are under the control of the union. Thus, according to defendant, the same conflicts inherent in the union's serving as class representative inhere in this joint representation of the union plaintiffs and individual plaintiffs by attorneys allegedly under the union's control. See *Carroll v. American Federation of Musicians,* 372 F.2d 155 (2d Cir. 1967), vacated on other grounds, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968); *Sweet v. Bermingham,* 65 F.R.D. 551 (S.D.N.Y.1975); *Lynch v. Sperry Rand Co.,* supra.

Plaintiffs vigorously dispute the existence of the alleged conflict. In fact, they have supplied extensive factual documentation, both in opposition to the defendant's motion to add a counterclaim and in opposition to defendant's class motion, to demonstrate the union's efforts to obtain relief from GM on the claims raised in the com-

plaint. Additionally, plaintiffs' attorneys have documented their experience and knowledge in cases of this type, and indeed their skill and experience is above question. Nevertheless, as I have noted above, the merits of the counterclaim can not be determined at this stage of the proceedings. Furthermore, all the plaintiffs have taken a united position on the various motions through the same attorneys and the same papers. While in fact this may have been the position both sets of plaintiffs would have taken in any case, it seems clear that it would be useful to have separate representation of the two groups in order to relieve the attorneys from any conflicts that might arise. See *Lynch v. Sperry Rand Co.,* supra.

■ This result should in no way be construed as a criticism of plaintiffs' counsel. However, in order to maximize the protection to the class, the plaintiffs are directed to appear by two separate attorneys or sets of attorneys hereafter. One attorney or set of attorneys shall represent the individual employees who have become class representatives, the other group shall represent the union plaintiffs.[2] Aside from the questions of representation, defendant appears to concede that the other requirements of Rule 23(a) and either 23(b)(1)(A) or (b)(2) have been met for the proposed primary class. Thus it is unnecessary to review the wealth of case law cited by plaintiffs to demonstrate that a class action is the appropriate and logical vehicle for a suit alleging sex discrimination under Title VII. See, *e. g., Wetzel v. Liberty Mutual Insur. Co.,* 508 F.2d 239 (3rd Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Gilbert v. General Electric Co.,* 375 F.Supp. 367 (E.D.Va.1974), aff'd, 519 F.2d 661 (4th Cir.), cert. granted, 423 U.S. 822, 96 S.Ct. 36, 46 L.Ed.2d 39 (1975). See also 3B J. *Moore,* Federal Practice ¶ 23.40 note 15 (2d ed. 1975).

■ Moreover, I am convinced that the proposed class of between 9,000 and 90,000 is so numerous as to make joinder impractical. Rule 23(a)(1). Likewise there are clearly questions of both law and fact which are common to the class. Rule 23(a)(2). Finally, not only does the risk of inconsistent or varying adjudications spoken of in Rule 23(b)(1)(A) exist, but also the defendant has apparently acted or refused to act on grounds generally applicable to the whole class such that injunctive or declaratory relief may be appropriate for the whole class within the meaning of Rule 23(b)(2).

■ The next set of impediments raised by defendant to the maintenance of this action as a class action challenges the adequacy of the individual subclasses. According to Rule 23(c)(4)(B) a class may be divided into subclasses to each of which the entirety of Rule 23 applies. Accordingly, each subclass must fulfill the requirements of Rule 23(a) and at least one of the subdivisions of Rule 23(b). Turning first to the subclass relating to tubal ligations,[3] defendant argues that the numerosity requirement of Rule 23(a)(1) is not met by the proposed class. However, the affidavits in support of the class indicate that the number of claimants would be between 2,000–2,500 women plus those whose claims arise during the litigation. Although this estimate is based on a primary class of 90,000, even if the primary class were narrowed to approximately 9,000 as urged by defendant, the number of claimants would be correspondingly reduced to between 200 and 250. In any case, the class being certified is not limited to claimants, but encompasses all those female employees eligible for the equitable relief sought.

Defendant also opposes a subclass on this claim for the purposes of damages, arguing that as to damages individual questions pre-

---

**2.** The adequacy of counsel for the representative plaintiffs, should new counsel be selected by them, will of course be subject to review.

**3.** Defendant has apparently dropped its opposition to the representatives' standing based on the lack of "suit letters" from the EEOC. It is uncontested that two plaintiffs did file with the EEOC and apparently the "suit letters" have been belatedly received.

dominate over common questions. However, defendant is here again applying a standard embodied in Rule 23(b)(3), whereas this subclass is certifiable as either a (b)(1)(A) or (b)(2) class. This is so because plaintiffs claim that defendant's policy discriminates per se against women. Thus the risk of varying adjudications on the lawfulness of the policy exists ((b)(1)(A)). Moreover, defendant's challenged policy relates to the class as a whole and may render injunctive or declaratory relief appropriate ((b)(2)).

Defendant's conclusion that no per se violation exists and that the only questions to be litigated are individual questions as to the medical necessity of the tubal ligation for each claimant is premature. As I held in permitting defendant to amend its answer, the merits of the various claims are not ripe for decision at this stage of the proceedings.

Where Rule 23(b)(1) or (b)(2) treatment is available, such a designation is preferable to (b)(3) treatment. See *Zachary v. Chase Manhattan Bank*, 52 F.R.D. 532 (S.D.N.Y.1971); *Van Gemert v. Boeing Co.*, 259 F.Supp. 125 (S.D.N.Y.1966). Since the class is properly certifiable as a (b)(2) class, a claim for money damages will not defeat its (b)(2) status. See *Wetzel v. Liberty Mutual Insur. Co.*, supra, *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971); *Leisner v. New York Telephone Co.*, 358 F.Supp. 359 (S.D.N.Y.1973); *Almenares v. Wyman*, 334 F.Supp. 512 (S.D.N.Y.), modified on other grounds, 453 F.2d 1075 (2d Cir. 1971), *cert. denied*, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Rodriguez v. Swank*, 318 F.Supp. 289 (N.D.Ill.1970), aff'd 401 U.S. 990, 91 S.Ct. 1232, 28 L.Ed.2d 529

(1971). See also 3B J. Moore, Federal Practice ¶¶ 23.40, 23.45[1] at 23–708 f.n. 43 (2d ed.1975).

The next subclass opposed by GM relates to the policy of mandatory maternity leave. Defendant argues that this policy was ended on December 20, 1971 when a policy of independent case by case determination of fitness to work was instituted. It is unclear whether or not plaintiffs admit this change in policy. On the one hand, the union claims credit for the policy change. See Plaintiffs' Memo I at 29. On the other hand, plaintiffs state that defendant "claims" to have ended the policy. See Plaintiffs' Memo I at 39. Furthermore, the complaint, which was filed after the alleged policy change, seeks declaratory and injunctive relief against the policy of mandatory maternity leave. This is the very sort of conflict sought to be avoided by my requiring separate counsel for the Union and individual plaintiffs. Therefore, I will not attribute any claims by the union to the representative plaintiffs. Furthermore, defendant acknowledges that in some instances plant supervisors may have failed to comply with the new policy.[4]

At this point it appears that the class is properly a (b)(1)(A) or (b)(2) class. Certainly the class has the characteristic cohesiveness of a (b)(2) class which most Title VII actions exemplify. See *Wetzel, supra*, 508 F.2d at 251. Likewise, the defendant would appear to have acted uniformly towards the class as a whole.

Should it appear that the equitable relief sought is bogus, and that this is purely an action for damages, I will entertain a motion to alter this certification pursuant to Rule 23(c)(1).[5]

---

**4.** Of course, whether or not the policy has in fact been changed, it apparently was in effect prior to December 20, 1971. Thus at least part of the class was subject to such a policy for a period of time within the scope of this action.

**5.** But see *Wetzel v. Liberty Mutual Insur. Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), for a discussion of the outstanding characteristics of a (b)(2) class. There, the necessity for injunctive relief evaporated after the class had been

certified. The court of appeals approved the district court's refusal to reevaluate the certification in the context of Rule 23(b)(3). That court found that Title VII suits exhibit a basic class cohesiveness and underlying equitable nature which make them fit subjects for (b)(2) certification. See also *Rodgers v. U. S. Steel Corp.*, 69 F.R.D. 382, 386 (W.D.Pa.1975); *Rhodes v. Weinberger*, 66 F.R.D. 601 (E.D.Pa.1975); 3B J. Moore, Federal Practice ¶ 23.45 at 23–708

The third proposed subclass relates to the 6-week pregnancy benefits of General Motors' insurance program. Once again, those of defendant's arguments which are addressed to the merits of this claim must be deferred to a later time. There appears to be no serious dispute that this is properly a Rule 23(b)(2) class. Accordingly, as is true of the two prior sub-classes, the supplementary monetary relief sought will not defeat the class' (b)(2) status. The defendant next argues that it would be inequitable to certify a class for damages on the 6-week benefits. GM points to its "good faith" defense, to the requirement of § 706(g) of the Act that a violation be intentional if back pay is to be awarded, and to the general hardship of a monetary penalty (see *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y.1972)). However, as noted in connection with the tubal ligation claim, the sub-class is not being certified for damages but rather for the primary equitable relief. Whatever monetary relief is sought is supplementary. In any case, none of defendant's arguments is dispositive of the damage claims. The claims and defenses cannot possibly be decided before the facts supporting them have been proved.

The defendant also seeks to narrow the proposed class to those female employees represented by IUE at the plants where the representative plaintiffs work. The defendant has failed to demonstrate that there are differences from one plant to another which would necessitate any narrowing of the classes in this respect. However, the defendant's further argument that the classes should be narrowed to exclude members of the 13 other unions with which GM has signed collective bargaining agreements merits special attention.

Defendant's position is that were the broader class certified: (1) the injunctive relief sought would involve the alteration of existing contracts to which the absent unions are signators; (2) the monetary relief sought by members of the absent unions would be the subject of counterclaims against those unions; and (3) the proof of facts surrounding the negotiations for each contract would somehow be precluded.[6]

For these reasons, the defendant argues that the certification of a class including members of all unions would render the absent 13 unions necessary and indispensible parties under Rule 19, Fed.R. Civ.P.; See *Evans v. Sheraton Park Hotel*, supra; *EEOC v. United States Pipe & Foundry Co.*, 375 F.Supp. 237 (N.D.Ala. 1974); *Lynch v. Sperry Rand Corp.*, supra.

Plaintiffs seek to bring themselves within the rationale of *Gilbert* where the court found that the existence of a single health benefits policy for all employees justified a class which included members of unions other than the one plaintiff union. See also *Burwell v. Eastern Airlines, Inc.*, 68 F.R.D. 495 (E.D.Va.1975) (certifying a nationwide class). However, it appears that the judge in *Gilbert* was persuaded not only by the uniformity of the defendant's policy toward all employees but also by the existence of a joint union bargaining committee which had unanimously ascribed to the position of plaintiffs during the contract negotiations. No such joint bargaining committee exists in the case at hand.

Plaintiffs also insist that defendant's allegedly uniform insurance policy renders the broadest possible class both appropriate and necessary to avoid the inconsistent results which are a factor in a Rule 23(b)(1) class. Moreover, they claim that defendant is estopped from challenging the breadth of the class by its correspondence with the United Automobile Workers ("UAW"). In that correspondence, GM indicated that this suit along with EEOC proceedings filed by UAW would provide a resolution of the

---

f.n. 43 and 44 (2d ed.1975). Compare *Baham v. Southern Bell Tel. and Tel. Co.*, 55 F.R.D. 478 (W.D.La.1972).

**6.** A fourth claim was raised that the presence of only one union as plaintiff would taint future representation elections. The requirement above of separate attorneys for the individual and union plaintiffs as well as the resolution reached, *infra*, on the joinder question negate whatever validity this argument may have had.

legal questions surrounding GM's health policy. Plaintiffs reason that such correspondence which IUE also received must have been addressed to many other unions as well. However, such limited correspondence and speculation will not support an estoppel. Moreover it is, at least in part, the interests of the absent unions which are at stake.

The correspondence does indicate that UAW, which apparently represents the largest portion of the proposed class, is aware of and in sympathy with the pending case. While this circumstance draws this case somewhat closer to *Gilbert* where the court found an identity of interests among all the unions which could be adequately represented by the one union plaintiff, there are not adequate assurances in the case at hand of the unity of the various unions. Therefore, I find that the more cautious route endorsed by *Lynch* and *Evans* will best safeguard the interests of all concerned and will assure that complete relief may be granted. The absent unions are thus indispensible parties within Rule 19, Fed.R.Civ.P.

The next question is whether those unions are subject to joinder. The defendant opposes joinder of the absent unions on the grounds that (1) such joinder will render the action unmanageable and (2) the absent unions may not be subject to jurisdiction as defendants since they were not named in plaintiffs' EEOC proceedings. The first contention is not a controlling consideration where, as here, the classes are Rule 23(b)(1) and/or (b)(2) classes. In any case, I believe that the presence of those unions will serve to simplify and clarify the proceedings.

Nor can the defendant's second contention be said to bar the joinder of the other unions. The unions' presence, as urged by defendant, may be necessary for both complete relief and protection of the

unions' interests since contracts to which they are signators may be affected by this action. Furthermore, the contract provisions in question (the six weeks of benefits) were the subject of both an IUE local's filing and, apparently, the UAW's filing with the EEOC. And in fact the notice and conciliation purposes of EEOC proceedings have concededly been accomplished on behalf of the class by the filings of the named plaintiffs. See *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78 (S.D.N.Y.1973). Moreover, the reasoning invoked by defendant in support of its counterclaim despite the union's not having been named as a respondent in EEOC proceedings bars the defendant from raising this argument against the joinder of absent unions.

In fact there is a considerable body of case law holding that in similar circumstances a union may be joined in order to effect complete relief; to fully develop the facts surrounding, or the proper interpretation of a contract; or to ensure the protection of all interests. *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974); *Evans v. Sheraton Park Hotel*, 164 U.S.App.D.C. 86, 503 F.2d 177 (1974); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 478 F.2d 979, 993 f.n. 25 (1973); *EEOC v. Brotherhood of Painters, Decorators and Paperhangers*, 384 F.Supp. 1264 (D.So.Dak.1974); *Held v. Missouri Pacific R.R. Co.*, 373 F.Supp. 996 (S.D. Tex.1974); *Kinnunen v. American Motors Corp.*, 56 F.R.D. 102 (E.D.Wis.1972); *Reyes v. Missouri-Kansas-Texas R.R. Co.*, 53 F.R.D. 293 (D.Kan.1971).[7]

Defendant relies on *LeBeau v. Libby-Owens-Ford Co.*, 484 F.2d 798 (7th Cir. 1973) for the proposition that a union which has not been charged in an EEOC proceeding may not be joined as a party defendant. However, in that case the international union sought to be joined was held not to be an indispensable party since no agreement to which it was a party would be affected

---

**7.** See *U. S. v. Chesapeake & Ohio Ry. Co.*, 471 F.2d 582, 592–93 (4th Cir. 1972), *cert. denied*, 411 U.S. 939, 93 S.Ct. 1893, 36 L.Ed.2d 401 (1973); *Torockio v. Chamberlain Manuf. Co.*, 51 F.R.D. 517 (W.D.Pa.1970); *Bremer v. St.*

*Louis Southwestern R.R. Co.*, 310 F.Supp. 1333 (E.D.Mo.1969). See also *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 445 (5th Cir. 1973); *Pegues v. Mississippi State Employment Service*, 57 F.R.D. 102 (N.D.Miss.1972).

by the judgment. It is also noteworthy that in *Bowe*, although the union could not be held liable for discrimination since it had not been before the EEOC, the union was upheld as a proper party to the action since its presence assured adequate representation of its male members who were not parties to the action.

In any case, the absent unions will be served with written notice by plaintiffs of the pending action. If they do not voluntarily join as plaintiffs within 30 days, they will be joined. This disposition resolves the problems concerning relief and proof raised by defendants. See p. 532, *supra*. The question of counterclaims against those unions is not before me at this time and nothing in this opinion should be construed as an advisory opinion on that question.

Finally, the class will be certified to include employees who are not represented by any union. I find that they are similarly situated to and well represented by the representative plaintiffs. The common questions of law and fact raised by the complaint make it logical that the rights of the non-unionized employees be determined in this proceeding.

The only remaining issue on the class definition is the cut-off date for the sub-classes. On the mandatory maternity leave and the 6 week benefits claims, defendant advances April 5, 1972 as the cut-off date since that was allegedly the date of the EEOC's first guideline indicating that either policy might offend Title VII. Although this date may be relevant to GM's defense, it cannot be used at this stage to deny claims prior to that time. Rather, the terms of Title VII itself must be used to define the class. Under 42 U.S.C. § 2000e–5(e), a charge may be filed with the EEOC within 300 days of the wrong if the complainant has first instituted proceedings with a State or local agency as did the

representative plaintiffs in this action. Thus one must count back 300 days from the EEOC filing, rather than from the State filing as plaintiffs urge, to reach the cut off date for claimants in the two sub-classes in question.[8]

The date from which to count backwards having been established, we must next determine the applicable statute of limitations. Although 42 U.S.C. § 2000e–5(e) speaks of 300 days, this number represents an enlargement via the 1972 amendments of the original statute of limitations of 210 days where the claimant has first filed with a state agency. There is no dispute that the tubal ligation claim, having been filed after the effective date of the 1972 amendments, should benefit from the 300 day provision. However, the other two claims were filed with the EEOC before the March 24, 1972 effective date of the 1972 amendments. Defendant's position is that any claims which arose more than 210 days prior to the EEOC filings of the representative parties are time-barred. In other words, only those who could have filed at the time that the representative plaintiffs did so may be members of the subclass. See *Wetzel v. Liberty Mutual Insur. Co.*, 508 F.2d 239 (3d Cir.), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). An extension of the statute of limitations may not, says the defendant, revive time-barred claims. See *James v. Continental Ins. Co.*, 424 F.2d 1064 (3d Cir. 1970).

However, section 14 of the 1972 amendments made the amendments to § 706 of the Act, 42 U.S.C. § 2000e–5, "applicable with respect to charges pending with the Commission on the date of enactment. . . ." Pub.L. 92–261, 1972 U.S. Code Cong. and Adm.News, p. 122. Thus the amendment would apply to the claims of the representative plaintiffs which were pending with the EEOC at the time the amendment took effect. Moreover, the

---

8. That plaintiffs have misconstrued the statute on this point is clear from their misquotation of the statute at p. 33 of their Second Memorandum. According to their quotation, the charge

"shall have been filed," apparently with the State agency, within 300 days. Actually, the statute requires that the EEOC charge "shall be filed" within 300 days. 42 U.S.C. § 2000e–5(e).

amendment had been in effect for almost a year at the time this suit was filed in January 1973. Therefore, the cut off date for the subclasses on the mandatory maternity leave and six weeks benefits will be 300 days prior to the filing with the EEOC by the representative plaintiffs.

The only remaining issue is that of notice to the class. The plaintiffs argue that in a (b)(1) or (b)(2) class notice is purely discretionary. Rule 23(d)(2). Defendant has taken no position on this question. If notice is required, plaintiffs request that it be of the limited type approved in *Gilbert*. The law on the necessity of notice in a (b)(2) case has undergone significant development even in this circuit. Compare *Lynch*, supra, with *Frost v. Weinberger*, 515 F.2d 57, 65 (2d Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976). See also *Wetzel*, supra, at 254; *Sosna v. Iowa*, 419 U.S. 393, 397 f.n. 4, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Elliott v. Weinberger*, 44 U.S. L.W. 2175 (9th Cir. Oct. 1, 1975).

However, in view of the fact that supplementary damages are sought in this action, I am inclined to require some form of notice in order to protect the interests of the class members who may have claims but who are not aware of the pending suit. The parties are directed to file supplemental memoranda on this point. The memoranda should also address themselves to the most suitable form of notice.

Settle order, on notice, certifying the class in accordance with the foregoing opinion.