**Judith GROGG et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, a corporation, Defendant.**

No. 73 Civ. 63 (K.T.D.)

United States District Court,
S. D. New York.

Jan. 27, 1978.

Vladeck, Elias, Vladeck, Zimny & Engelhard, P. C., New York City, for class plaintiffs, by Judith P. Broach, Stephen C. Vladeck, Irving Abramson, New York City, of counsel.

Winn Newman, Ruth Weyand, Robert Friedman, Washington, D. C., for plaintiff Unions.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant, by Martin Kleinbard, Anthony M. Radice, Martin Flumenbaum, Phillip McKinney, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Several individual female employees of General Motors Corporation ("GM"), the International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC ("IUE") and five of IUE's locals which represent these employees have brought this action, approved for certification as a class action with the individually named plaintiffs as class representatives, 72 F.R.D. 523 (S.D.N. Y.1976), challenging certain provisions of GM's employee disability program as violative of Title VII of the Civil Rights Act of 1964 (Title VII), specifically Section 703(a), 42 U.S.C. § 2000e–2(a). Count I of the complaint alleges that the disability plan's six-week limitation on payments for disabilities arising from pregnancy and childbirth in contrast to payments of up to 52 weeks for other disabilities offends Title VII. Count II contests defendant's now discontinued requirement of forced maternity leave. Count III alleges as discriminatory defendant's failure to pay sickness and accident benefits to female employees disabled as a result of undergoing necessary bilateral tubal ligation operations; i. e., surgical sterilizations.

Relying on the Supreme Court's opinion on General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), decided after this case was filed, defendant has moved, pursuant to Rule 12(c), F.R. Civ.P., for judgment dismissing Counts I and III for failure to state claims upon which relief can be granted. The class and union plaintiffs each has cross moved, pursuant to Rule 15(a), F.R.Civ.P., for leave to file amended complaints so as to state claims under the New York State Human Rights Law, New York Executive Law § 290, et seq., paralleling each of the three federal claims, and under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 for breach of the collective bargaining agreement between GM and plaintiff unions based on GM's purported denial of disability benefits for bilateral tubal ligations. The union plaintiffs have additionally sought leave to replead Counts I, II and III so as to assert separate violations of both Section 703(a)(1) and (2) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) and (2), instead of the general violation of Section 703(a) presently alleged.[1]

### Legal Sufficiency of Count I

In General Electric Co. v. Gilbert, supra, a class of women employees of General Electric Company challenged that company's exclusion of pregnancy-related disability benefits from coverage under its employee disability plan, which provided for a maximum of 26 weeks of benefit for any one continuous period of disability or successive periods due to related causes other than pregnancy, as violative of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1). The District Court for the Eastern District of Virginia, 375 F.Supp. 367, after trial on the merits, found that General Electric had discriminated on the basis of sex in the operation of the plan, and the Court of Appeals for the Fourth Circuit affirmed, 519 F.2d 661. However, the Supreme Court reversed, relying on its decision in Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), in which a state-operated disability insurance system which excluded pregnancy-related disabilities withstood a facial gender-based discrimination attack mounted on the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. In holding General Electric's pregnancy-related disability exclusion non-violative of Title VII, the Supreme Court stressed, as it did in Geduldig, that the disability plan represented a gender-free assignment of risks undertaken in accordance with normal actuarial principles,

---

1. In accordance with my opinion of August 17, 1976, the union plaintiffs have engaged separate counsel from the individual plaintiffs who have been named as the class representatives. 72 F.R.D. 523, 529–530. As indicated above, both groups of plaintiffs seek to file amended complaints which differ from each other slightly in form but which appear substantially identical.

and noted that even if it were unnecessary to prove discriminatory intent to establish a *prima facie* violation of § 703(a)(1), the Gilbert employees had failed to make the less stringent showing of gender-based discriminatory effect resulting from the pregnancy exclusion.

Plaintiffs argue that the instant case is distinguishable from *Gilbert* in several material respects. They claim that unlike the plan in *Gilbert*, the GM plan treats pregnancy as an illness, that it does not exclude pregnancy benefits but rather provides for the receipt of pregnancy related disability payments on a disparate basis from other benefits, that *Gilbert* applies only in the case of disability resulting from normal pregnancy and not, as here, where disability payments for complications resulting from pregnancy are challenged, and that, in any event, plaintiffs should be given the opportunity to show that the GM six-week limitation on pregnancy benefits has a gender-based discriminatory effect on female employees. They further claim that GM, unlike General Electric in *Gilbert*, has failed to assert a disparity in the comparative costs of providing disability coverage to male and female employees.[2]

Defendant disputes the factual and legal bases for these distinctions. My consideration of the viability of these distinctions in the aftermath of *Gilbert*, however, appears to be foreclosed by the recent decision of the Second Circuit in *Women in City Government United v. City of New York (Women)*, 563 F.2d 537 (2d Cir. 1977).

*Women* was a class action which challenged certain of the City's pregnancy-related policies as violative of the Fifth and Fourteenth Amendments, Title VII and the Civil Rights Act of 1870, 42 U.S.C. § 1981. Included in the class of *Women* plaintiffs were women who had experienced various types of complications during their pregnancies. See Complaint in *Women in City Government United v. The City of New York*, Dkt. No. 74 Civ. 304, ¶¶ 7, 9, 11, 14. Three distinct types of claims of sex discrimination were raised in the complaint, only the following two of which are here relevant: that the City's Health and hospitalization plans offered "substantially fewer benefits for pregnancy and pregnancy-related conditions than for other medical and surgical problems requiring hospital and medical care," *Women*, 563 F.2d at 539, and that the Welfare Fund excluded temporary disability benefits for pregnancy-related disabilities while providing for other types of disabilities. *Id.*

The Second Circuit, in affirming on the basis of *Gilbert* the district court's dismissal of the Title VII claims, drew no distinction between the limited pregnancy-related benefits available under the City's medical plan and the exclusion of such benefits from the City's disability plan. Moreover, the court rejected the plaintiffs' contention that *Gilbert* would allow them an opportunity to establish discrimination through proof of disparate impact on female employees. The Second Circuit noted that while the *Gilbert* dictum "theoretically implies the possibility of a case based on disparate impact theory, it hardly amounts to a holding "that if such theory were proved, a *prima facie* case would have been made." *Women*, 563 F.2d at 540. Instead, the court reasoned:

An insurance plan is merely a form of compensation. 429 U.S. 139, n. 17, 97 S.Ct. 401. Discriminatory effect or impact, in this context, is not measured by reference to a single form of compensation, but could be proved only by showing

---

2. This so-called "cost differential" defense, asserted by General Electric at the district level in *Gilbert*, was given virtually no weight by the district court. See *Gilbert v. General Electric Co.*, 375 F.Supp. 367, 382–83 (E.D.Va.1974). The analysis of the *Gilbert* issue by the Supreme Court did not take cost, as such, into consideration, except to note that "Title VII's proscription on discrimination does not require, in either [the case where pregnancy disability

benefits are excludable from a disability plan of the case where there is no disability coverage at all], case the employer to pay that incremental amount [which would have to be paid by a female, but not male, employee to insure herself against pregnancy-related disabilities.]" *Gilbert*, 429 U.S. at 139 n. 17, 97 S.Ct. at 410. Thus, the fact that GM has not alleged comparative costs of coverage by sex is an irrelevant distinction.

a disparity in the total value of all forms of compensation given to men and women. . . . Thus, if plaintiffs' view were sound, it would require every employer subject to Title VII to determine separately, with respect to race, color, religion, sex or national origin, the value of each type of compensation he provides. Presumably, the disparities that would inevitably be discovered would each have to be justified by a business necessity. . . . To read Title VII so as to require such determinations and justifications to be made by employers, and, concomitantly, by the district courts, would be to impose upon the Act an administrative complexity undreamed of by its draftsmen. Had the Supreme Court wanted the lower federal courts to embark on such a course, it would have been far more explicit in the General Electric opinion; indeed, the entire thrust of recent Title VII decisions appears to point in the opposite direction.

*Id.* at 541. *See also Guse v. J. C. Penney Co., Inc.,* 562 F.2d 6 (7th Cir. 1977) (failure of pleading to challenge total company benefits as discriminatory precludes inquiry into discriminatory effect.)

■ Although plaintiffs have attempted to distinguish *Women* on the grounds that the disability plan challenged in that case excluded pregnancy-related disability benefits, while GM provides for such benefits but for a shorter time period than other benefits, this distinction is without substance in light of the failure of *Women's*

challenge to the "limited pregnancy benefits" feature of the health and hospital insurance plan in that case. Clearly, Count I of the instant complaint falls squarely within the holding of *Women,* and, as such, must be dismissed.

■ The fact that this count is brought as violative of Section 703(a) of Title VII, thereby presumably encompassing not only § 703(a)(1), which governed the decision in *Gilbert,* but also § 703(a)(2),[3] does not change this result. The pertinent allegations of statutory violation contained in Count I stated that GM "is discriminating against [plaintiffs] with respect to [their] compensation, terms, conditions and privileges of employment because of [their sex]" in violation of "Section 703(a)." (Complaint ¶¶ 17(c), 18, 13). These allegations track the language of § 703(a)(1); despite the purported inclusion of violations of § 703(a)(2),[4] the complaint cannot fairly be read as challenging the disability limitation under that section. In any event, I note that the complaint in *Women* similarly alleged a general violation of "42 U.S.C. § 2000–e" by the city's committing acts of discrimination in terms of employment; that the statutory violation was broadly alleged was irrelevant to the Second Circuit's determination dismissing the similar claim.

*Legal Sufficiency of Count III*

■ Count III of the Complaint essentially alleges that GM's failure to pay dis-

---

**3.** Section 703(a)(1), 42 U.S.C. § 2000e–2(a)(1) makes it unlawful for an employer

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [sic] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

while Section 703(a)(2), 42 U.S.C. § 2000e–2(a)(2) makes it unlawful for an employer

> to limit, segregate, or classify his [sic] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his [sic] status as an employee, because of such individual's race, color, religion, sex, or national origin.

**4.** Plaintiff unions argue that the six-week limitation on pregnancy benefits removes any incentive for GM to allow female employees to work during pregnancy and after childbirth whereas payment of up to fifty-two weeks of benefits for other disabilities "serves as a disincentive to defendant GM to require its male employees to go on leave or to remain on disability leave when they were able to work" (Memorandum of Plaintiff Union in Opposition at 8). Thus, they contend, the six-week limitation in some manner causes women to be subjected to longer periods of leave than male employees and constitutes a classification which adversely affects the employment opportunities of female employees within the meaning of Section 703(a)(2).

ability benefits for disability from bilateral tubal ligations when it regularly pays sickness and accident benefits for all other disabilities arising from both elective and required surgical procedures constitutes sex-based discrimination in the terms and conditions of plaintiffs' employment in violation of Section 703(a) of Title VII. Defendant has submitted affidavits indicating that prior to November 1976, when GM changed its disability payment policy so as to cover disabilities from both elective and required male and female surgical sterilizations, GM disability benefits were provided for female employees disabled from tubal ligations and male employees disabled from vasectomies equally on a showing of medical necessity. Since the Complaint alleges, however, that the tubal ligations for which benefits were sought and denied were medically required, plaintiffs argue that the existence of a factual issue of medical necessity, and consequent unevenhanded administration of benefits, precludes dismissal of Count III.

GM contends that the existence of a "medical necessity" issue is relevant only to a claim for breach of contract and that under *Gilbert* and *Women*, absent allegations of invidious sex discrimination, GM's disability payment policy with respect to surgical sterilizations is permissible under Title VII. However, the existence of this factual issue of medical necessity in the context of surgical sterilizations which may be undergone by men and women alike, places this claim outside of the holdings of *Gilbert* and *Women*. If GM, as alleged, paid disability benefits to men disabled from medically required vasectomies and not to women disabled from medically necessary tubal ligations, then the situation is otherwise than in *Gilbert*, where the plan "cover[ed] the same categories of risk for both male and female employees, and [was] applied in an even-handed manner . ." (GM Reply Memorandum, p. 25).

*Gilbert* recognized that a disability plan "is nothing more than an insurance package, which covers some risks, but excludes others." *Gilbert*, 429 U.S. at 138, 97 S.Ct. at 409. It reasoned, however, that failure to compensate women for an "additional

risk, unique to women" did "not destroy the presumed parity of the benefits, accruing to men and women alike, which results from the facially even-handed inclusion of risks." *Id.* at 139, 97 S.Ct. at 410 (emphasis omitted). Such is not the situation here presented. Nor is the instant situation analogous to that in *Women*, in which *Gilbert* was applied, where fewer medical benefits were provided for pregnancy-related conditions than for other medical and surgical problems, thus barring a Title VII claim predicated on a disparate inclusion of risks. Disability resulting from surgical sterilization does not present additional risks unique to one sex which may be included or excluded from disability coverage consistent with Title VII. According to GM, surgical sterilization-related disability is a risk from which employees of both sexes are presently protected, and were protected if the standard of medical necessity was met; according to plaintiffs, whose allegations of denial of benefits despite medical necessity must be taken as true for the purposes of this motion, it is "no risk from which men are protected and women are not," *Gilbert* at 138, 97 S.Ct. at 409, quoting *Geduldig v. Aiello*, 417 U.S. at 496–97, 94 S.Ct. 2485. Since the benefits in question are ones which accrue to men and women alike, then Count III, in raising the issue of the even-handed administration of such benefits between male and female employees, adequately states a Title VII claim.

## Motions to Amend

Both the union and class plaintiffs seek to file amended complaints alleging pendent state claims under the New York State Human Rights Law, New York Executive Law § 290 et seq., arising out of the same facts as the three federal claims originally asserted. They also seek to add a claim of breach of the collective bargaining agreement between plaintiff union and GM as a result of GM's purported failure to pay sickness and accident benefits to women employees disabled from tubal ligation operations. Plaintiff unions additionally seek to separately allege violations of Section

703(a)(1) and 703(a)(2) of Title VII in Counts I, II and III, instead of the broad violation of Section 703(a) presently urged.

■ Turning to the latter proposed amendment first, defendants contend that separately alleging the component subdivisions of § 703(a) would not change the substantive allegations and simply would be a useless endeavor. Since allowing this amendment would thus have no prejudicial effect on defendants, leave to amend Counts II and III as presently asserted to further delineate the scope of the Title VII challenge is granted. With respect to Count I, however, leave to so amend is denied. Although § 703(a)(2), unlike § 703(a)(1), does not use the term "discriminate" in its prohibitions, it would appear that the gist of a § 703(a)(2) challenge would involve allegations and proof of the same type of disparity required for § 703(a)(1). *Mitchell v. Board of Trustees of Pickens County School District "A"*, Civ.No. 75–143 (D.S.C. July 27, 1977). This conclusion is supported by the fact that the complaint in *Women* alleged a violation of Title VII which was not restricted to 703(a)(1), but like the instant case, encompassed 703(a)(2) as well. No useful purpose would thus be served by allowing an amendment which would be subject to a successful motion to dismiss for legal insufficiency.

Turning to the proposed amendments seeking to assert claims under the New York State Human Rights Law, the state claim which parallels Count I can be initially disposed of. Since Count I has been dismissed, there is no reason to resolve the pendent state claim in federal court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218

(1966); *Women, supra*, at 541. Accordingly, I decline the invitation to do so.

■ Likewise, I would decline to exercise pendent jurisdiction over the proposed state claims paralleling Counts II and III. *Gibbs* recognized that pendent jurisdiction serves the ends of "judicial economy, convenience and fairness to litigants" and in the absence of such factors, federal courts should be hesitant to assume the same. *Id.*, 383 U.S. at 726, 86 S.Ct. at 1139. Five years has passed since the commencement of this lawsuit; in the interim, class action status has been approved and the issues presented have been narrowed and defined. Allowing assertion of pendent state claims at this juncture would entail consideration of the propriety and definition of a class for these claims and application of a different and longer statute of limitations which could expand the suit,[5] and would raise novel and unresolved issues of state law which have no relation to or bearing on the federal issues.[6] With regard to this latter consideration, *Gibbs* recognized that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id. See also Pride v. Community School Board of Brooklyn, N. Y. School District # 18*, 482 F.2d 257, 272 (2d Cir. 1973); *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972).

Moreover, the New York State Division of Human Rights has represented in its *amicus* brief that numerous complaints challenging the legality of GM's policies here in issue are pending before the Division whose anticipated favorable resolution thereof will extend to most, if not all, of

---

5. Defendant argues that either a five-year or one-year statute of limitation applies to the state claims; plaintiffs contend that the one-year provision of New York Executive Law § 297(5) is to be used. Whichever is applicable, it is clear that it is longer than the 300 day EEOC charge filing period previously held to control the federal claims. 72 F.R.D. at 534–35.

6. For example, the applicability of the recent decision in *Brooklyn Union Gas Co. v. New York State Human Rights Appeals Board*, 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976); whether the one-year statute of limitations for filing a State Human Rights Division complaint applies to judicial action, an issue on which the New York Court of Appeals has apparently not ruled. *But see Lanzer v. Fairchild Publications, Inc.* 46 A.D.2d 644, 360 N.Y. S.2d 437 (1st Dept. 1974).

plaintiff class members and unions. In its urging this Court to allow the amendments sought, Division has directed my attention to the "important public policy of the State of New York" that consideration of these claims would be effecting. (*Amicus* Brief, p. 6). Clearly at this juncture, the State is in a better and more proper position than this Court to effectuate its own policies and construe issues peculiar to state law. Accordingly, leave to amend the complaint to assert these pendent state claims is denied.

The remaining proposed claim is sought to be asserted under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and alleges that defendant's failure to pay benefits to employees disabled by tubal ligation operations constitutes a breach of the Supplemental Agreement Covering Insurance, a part of the collective bargaining agreement between GM and plaintiff unions. Defendant objects to the assertion of that claim for legal insufficiency since the plaintiffs named therein have failed to allege exhaustion, or excuse for non-exhaustion, of the "Informal Procedure for Review of Denied Claims" (Review Procedure) provided for in that Agreement, and have, in fact, made no such attempt at exhaustion. Plaintiff unions have submitted an affidavit from the local insurance representative and president of the union which represents the employees named in the claim, attesting that at no time during the past fourteen years has the Review Procedure been invoked with respect to any claim and that the Supplemental Agreement provides that disputed claims are not subject to the grievance procedure.

While the local insurance agent's interpretation of the Agreement is appreciated, the express language of the Supplemental Agreement provides in Section 8 thereof that "any difference arising thereunder shall [not] be subject to the grievance procedure established in the Collective Bargaining Agreement between [GM] and the Union," and not that disputes need not be subject to the Review Procedure expressly provided in the Supplemental Agreement thereto. Moreover, this affidavit fails to indicate whether benefits for any of the claims that arose in the past fourteen years were denied and whether judicial proceedings were commenced with respect to such denied claims notwithstanding the conceded availability of the Review Procedure. Indeed, a GM employee of the Employee Benefits Sections, Industrial Relations Staff of GM has attested that during 1970 to 1976, 5,846 denied claims were taken through the Review Procedure by GM employees and their union representatives, although the location of the employees and identification of the unions involved is not indicated. However, this affidavit fails to indicate whether any denied claims were the subject of judicial proceedings despite the failure to utilize the Review Procedure. In light of all of this, the contents of both the affidavits submitted on behalf of plaintiffs and defendant must be accorded little weight.

The class plaintiffs concede that an employee must exhaust available grievance procedures set forth in an applicable collective bargaining agreement before maintaining a Section 301 action. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). However, they maintain that the grievance procedure contemplated by that proposition must be an exclusive remedy that results in a final and binding determination, and that the Review Procedure here in issue is not such a proceeding.

█ It would appear that if the parties to a collective bargaining agreement provide for a grievance procedure but do not intend it to be an exclusive remedy, exhaustion will not be required. *Vaca v. Sipes*, 386 U.S. 171, 184 n. 9, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Plaintiffs argue that the parties' intent that the Review Procedure not be an exclusive remedy is evidenced by the exclusion of language from the Supplemental Agreement paralleling the following contained in the Collective Bargaining Agreement in Section 28n:

Neither the Corporation, nor the Union or International Union, nor any employe or group of employes, may initiate or

cause to be initiated or press any court action claiming or alleging a violation of this Agreement or any local or other agreement amendatory or supplemental hereto, where such claim is also the subject matter of a grievance which is then open at any step of this grievance procedure.

■ Even were this provision not specifically excluded from the Supplemental Agreement by virtue of Section 8 thereof, it would not bar assertion of a claim under Section 301 of the Labor Management Relations Act so long as no grievance was pending in the Review Procedure machinery. Since no provision for the exclusivity of the Review Procedure is express and it does not appear from what little evidence of intent offered that the same was to be implied,[7] it would appear that no allegations of exhaustion, or excuse for non-exhaustion, are required. Since no prejudice in allowing the assertion of their Section 301 claim is offered by GM, leave to amend the complaint so as to include it is granted.

Defendant's motion to dismiss is granted as to Count I and denied as to Count III; plaintiffs' cross-motions for leave to amend their complaints are granted in part and denied in part in accordance with this opinion. The class and union plaintiffs are directed, however, to file a joint amended complaint reflecting those additional allegations for which leave to amend has been granted.

Settle order on notice.

---

7. Plaintiffs also contend that Article II § 7(h)(3) of the Supplemental Agreement recognizes the availability of a judicial remedy by providing that "no legal action shall be brought by any employe to recover from the insurance company" except in accordance with specific time limitations. Although this provision deals only with actions against an insurance company and not against an employer, as here, it is some indication that some type of judicial action is contemplated.