Rosalie GUTIERREZ, Lorraine Gutierrez and Luis Gutierrez, Plaintiffs,

v.

Carl VERGARI, Fredrick Arone, Joel Aurnou, Frank Corollo, Richard Daronco, James Duggan, Leon Greenspan, Henry Gustafson, Wayne Stix, Wallace Haviland, Sandford Lindenbaum, Nicholas Kralik, John Lydon, Alice Stewart, Harvey Lothringer, Patrick McKay, Joseph Santagate, Diva Sagrati, Joseph Rakacky, Joseph Ragno, Ralph Purdy, Jerry Holley, John Ruddley and John Madry, Sr., Defendants.

No. 79 Civ. 3558.

United States District Court, S. D. New York.

Oct. 16, 1980.

Conrad J. Lynn, New York City, for plaintiffs.

Greenspan & Jaffe, White Plains, N. Y., for defendant Leon Greenspan; Joseph D. De Salvo, White Plains, N. Y., of counsel.

Allan S. Moller, Town Atty., Town of Greenburgh, Elmsford, N. Y., for defendants Henry Gustafson, Joseph Santagate, Ralph Purdy, Jerry Holley and John Madry, Sr.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, N. Y., pro se and for defendants Frank Corollo, Sandford Lindenbaum and Joseph Rakacky; Janet Cunard, Asst. Dist. Atty., White Plains, N. Y., of counsel.

Langan & Levy, New York City, for defendant Nicholas Kralik; Michael C. Weiner, New York City, of counsel.

John H. Galloway, 3d, Special Village Atty., Village of Scarsdale, Scarsdale, N. Y., for defendants Wallace Haviland and John Lydon.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants Hon. Richard Daronco, Alice Stewart, Patrick McKay, and Diva Sagrati; Barry R. Fertel, Deputy Asst. Atty. Gen., New York City, of counsel.

Wayne P. Stix, White Plains, N. Y., pro se.

ROBERT J. WARD, District Judge.

The complaint in this action seeks damages for violation of 42 U.S.C. §§ 1981, 1982, 1983, 1985 & 1988. Plaintiffs move for leave to serve and file an amended complaint. Twelve of the defendants have moved the Court, under Rule 12(b)(6), Fed. R.Civ.P., to dismiss the complaint either as it presently stands or as it would stand if plaintiffs' motion were granted.

*Background*

On June 25, 1974, plaintiffs' business premises were searched by members of the White Plains, Greenburgh, and Scarsdale Police Departments. Certain items recovered from these premises were later identified as having been stolen. As a result, Luis Gutierrez was arrested and charged with criminal possession of stolen property, possession of a weapon, and defacing a firearm. He was tried and convicted on these charges in March, 1976; on May 3, 1976, he was sentenced to concurrent terms of one year, one year, six months, and six months. The judgment of conviction was unanimously affirmed by a December 27, 1977 order of the Supreme Court of the State of New York, Appellate Division, Second Department. An application for leave to appeal to the New York Court of Appeals was denied by Justice Mollen in an order dated February 10, 1978.

On May 2, 1979, plaintiffs instituted a *pro se* action in this Court, 79 Civ. 2305(RJW). The complaint alleged violations of Luis Gutierrez' civil rights in the course of his arrest and trial. The present action, 79 Civ. 3558(RJW), was commenced by a *pro se* complaint filed July 10, 1979, which charged substantially the same defendants with identical civil rights violations. On application of the plaintiffs, the complaint in 79 Civ. 2305(RJW) was dismissed pursuant to Rule 41(a)(2), Fed.R.Civ.P., by an order of the Court dated August 22, 1979. This order also stayed all proceedings in the present action until September 17, 1979, so that plaintiffs might have the opportunity to retain counsel. Plaintiffs' counsel filed a notice of appearance on August 27, 1979.

At a pre–trial conference held September 18, 1979, the Court directed each of the named defendants in the present action to communicate with plaintiffs' counsel, stating the legal reasons why the action should be dismissed against such defendant. This

directive was made in an attempt to simplify the pleading process by discontinuing the action as to those defendants having valid legal defenses. Stipulations dismissing the action as to defendants Herold, Adler and Macaro were filed, and dismissal was ordered by the Court with respect to each of these defendants.

Another conference was held on October 26, 1979, at which plaintiffs' counsel made known plaintiffs' desire to serve and file an amended complaint. The Court directed plaintiffs to file a motion for leave to serve and file an amended complaint by December 21, 1979. At the same time, the Court directed defendants to file any opposition they might have to this motion, and also any motions to dismiss which they saw fit to serve, by January 18, 1980.

Plaintiffs filed the instant motion for leave to serve and file an amended complaint on December 17, 1979. A great majority of the defendants either filed papers opposing this motion or brought on motions to dismiss the complaint as it would be amended if the motion were granted. For the reasons hereinafter stated, plaintiffs' motion to amend is granted as are certain of the motions to dismiss. The remaining motions to dismiss are denied.

### Discussion

#### I. Plaintiffs' Motion for Leave to Serve and File Amended Complaint

Papers in opposition to plaintiffs' motion for leave to serve and file an amended complaint have been filed on behalf of fifteen defendants. These papers state two basic grounds of opposition to the instant motion. First, defendants Daronco, Stewart, McKay, Sagrati, Vergari, Corollo, Lindenbaum, Rakacky, Stix and Kralik argue that plaintiffs' motion should be denied on account of what they view to be the numerous requests for amendment already made by plaintiffs. This is plaintiffs' first effort to amend the complaint filed in the present action. However, these defendants point to plaintiffs' first action, and the amended complaints served in the course thereof, to justify their observation that the proposed complaint would be the fourth (or even the fifth) in the present controversy.[1]

It is clear that a repeated failure to cure deficiencies in the complaint by amendments previously allowed may provide a basis for the trial judge to exercise his or her discretion to deny a motion for leave to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). For several reasons, the Court is not persuaded that the concern to avoid repetitious amendments is sufficiently implicated by plaintiffs' conduct to justify denial of the instant motion. First, the fact that plaintiffs have heretofore acted *pro se* inclines the Court to a certain liberality with respect to application of the procedural requirements. *Mount v. Book–of–the–Month Club, Inc.*, 555 F.2d 1108, 1112 (2d Cir. 1977); *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 703 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972). Second, the Court is of the opinion that its convenience as well as that of the litigants would be greatly served by replacing plaintiffs' current rambling, discursive *pro se* complaint with the new one prepared by plaintiffs' counsel.

Most important with respect to this first ground of opposition to plaintiffs' motion, these defendants have failed to make any clear showing that they would be prejudiced by allowing the amended complaint. The most important factor to a trial judge's decision regarding a motion for leave to amend is whether the opposing party will be prejudiced if the moving party is permitted to alter his or her pleading. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *see Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977). The Court is

---

1. The first action, 79 Civ. 2305(RJW), was commenced by a complaint filed May 2, 1979. On May 23, 1979, plaintiffs served an amended complaint; on June 12, 1979, they served an "amended pleading by leave to Court [sic]." Then, on July 10, 1979, plaintiffs filed the complaint in the present action, 79 Civ. 3558(RJW).

mindful of the fact that every motion filed by a party to a litigation imposes a certain cost on the opposing party by virtue of the necessity of examining the motion to consider whether and how to respond to it. However, defendants' opposition seems to the Court to be insubstantial. In essence, they oppose the motion *solely* because of the expense imposed on them in filing their opposition.

Defendants Gustafson, Santagate, Purdy, Holley, Madry and Kralik put forth a second ground of opposition to the instant motion. They contend that plaintiffs' motion should be denied insofar as they are concerned because the proposed amended complaint fails to state a claim upon which relief could be granted. The trial judge may properly exercise his or her discretion to deny a motion to amend where the complaint, as amended, would be subject to a motion to dismiss under Rule 12(b)(6), Fed. R.Civ.P. *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 385 (2d Cir. 1968); *Grogg v. General Motors Corp.*, 444 F.Supp. 1215, 1221 (S.D.N.Y. 1978); *Horwitt v. Movado Watch Agency, Inc.*, 62 F.R.D. 5, 7 (S.D.N.Y.1974); *see Foman, supra*, 371 U.S. at 182, 83 S.Ct. at 230. It has been reasoned that where the defendant suggests that the complaint as amended would fail to state a claim, the court should deal with the issue on the motion for leave to amend, rather than mechanically allowing the amendment and forcing the defendant to go through the formality of instituting a distinct Rule 12(b)(6) motion. 3 Moore's Federal Practice ¶ 15.08[4], at 15–109 (2d ed. 1980).

The Court is not persuaded, however, that the above reasoning applies in the present action. The cases employing this thinking usually have involved situations where the proposed amendment would have superseded a complaint which itself either had already been dismissed under Rule 12(b)(6) or was already subject to an equivalent motion. *See, e. g., Grogg, supra*, 444

F.Supp. at 1221. Here, none of defendants Gustafson, Santagate, Purdy, Holley, Madry and Kralik have moved to dismiss the present complaint under Rule 12(b)(6). Thus, if the proposed amended complaint were disallowed in respect of these defendants, the present complaint would remain. While there would then indeed be no need for these defendants to file a distinct Rule 12(b)(6) motion with respect to the proposed amended complaint, they would still have to file such a motion regarding the present complaint. Either way, then, a Rule 12(b)(6) motion will be required for these defendants to obtain dismissal of this action. The Court accordingly does not view the present situation to implicate concerns of judicial economy in the same way as did the situations before the courts in *Grogg* and *Horwitt*.

The motion for leave to serve and file the proposed amended complaint is therefore granted without costs. Plaintiffs are advised, however, that any further motions to amend may result in the granting of costs to each defendant.

## II. *Defendants' Motions to Dismiss*

Defendants Greenspan, Stix, Vergari, Corollo, Lindenbaum and Rakacky each brought motions to dismiss plaintiffs' original complaint under Rule 12(b)(6), Fed.R. Civ.P. The Court did not decide these motions prior to deciding the plaintiffs' motion for leave to serve and file the amended complaint. Since the original complaint has now been superseded by the amended complaint, these motions will be considered with respect to the amended complaint. Defendants Haviland, Lydon, Daronco, Stewart, McKay and Sagrati have brought motions to dismiss the complaint, either as originally filed or as amended, under Rule 12(b)(6). These motions will also be considered with respect to the amended complaint. No motions to dismiss have been filed by the other defendants in this action.[2]

---

**2.** Defendants Gustafson, Santagate, Purdy, Holley, Madry and Kralik, as described above, filed affidavits in opposition to plaintiffs' motion for leave to serve and file the amended

complaint. The affidavit filed on behalf of defendant Kralik also purported to support Kralik's motion to dismiss dated May 19, 1979. However, this motion was filed in response to

In considering the instant motions to dismiss under Rule 12(b)(6), the Court accepts all material allegations in the amended complaint as true, and construes them liberally in favor of the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). It has often been said that a complaint should only be dismissed if it appears that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). However, the Court is mindful of the rule that a plaintiff relying upon 42 U.S.C. § 1983 ("§ 1983")[3] must include in his or her complaint at least some allegations of facts indicating a deprivation of civil rights. *Fine v. City of New York*, 529 F.2d 70, 73 (2d Cir. 1975); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972). As plaintiffs are now represented by counsel, the usual rule that the pleading requirements are considerably more relaxed for plaintiffs proceeding *pro se, see Williams· v. Vincent*, 508 F.2d 541, 543 (2d Cir. 1974), is inapplicable.

## A. Defendant Daronco

Defendant Hon. Richard Daronco was, during the events described in the amended complaint, a County Judge of Westchester County, State of New York. The amended complaint charges defendant Daronco with committing certain improprieties in the course of presiding over the above–described criminal trial of Luis Gutierrez. Amended Complaint at ¶¶ 18–19. Defendant Daronco's Rule 12(b)(6) motion to dismiss the amended complaint is based on the doctrine of judicial immunity.

It is well established that judges of courts of general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. *Stump v. Sparkman*, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978). This doctrine of judicial immunity is fully applicable to suits, such as the present action, maintained under § 1983. *Pierson v. Ray*, 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). The immunity conferred by this rule is only forfeited when the judge in question acts in the clear absence of any jurisdiction. *Stump, supra*, 435 U.S. at 356–57, 98 S.Ct. at 1104–05; *Heimbach v. Village of Lyons*, 597 F.2d 344, 346 (2d Cir. 1979). The alleged conduct of defendant Daronco described by the amended complaint all occurred during the time in which he presided over the trial and sentencing of Luis Gutierrez.[4] It is not contended that defendant Daronco was without jurisdiction to so preside. Accordingly, the Court finds the doctrine of judicial immunity to be applicable and dismissal of the action against defendant Daronco to be warranted.

## B. Defendants McKay, Sagrati and Stewart

Defendants Patrick McKay and Diva Sagrati were employed as court reporters in

---

the companion action to the present action, 79 Civ. 2305(RJW); when this companion action was dismissed, the motion was denied concurrently. As a result, Kralik has no motion to dismiss before the Court in the present action. As described above, the action has by stipulation been dismissed against defendants Adler, Macaro and Herold. The remaining defendants (Arone, Aurnou, Duggan, Lothringer, Ragno and Ruddley) have filed no papers with the Court with respect to the present action.

**3.** As noted above, the original complaint claimed violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985 & 1988. The amended complaint confines itself to § 1983.

**4.** Specifically, paragraph 18 of the amended complaint alleges that defendant Daronco, in concert with other defendants, tampered with evidence and altered exhibits with the object of securing the conviction of Luis Gutierrez. This paragraph also alleges that defendant Daronco made various errors of law during the trial to the prejudice of Luis Gutierrez. Paragraph 19 alleges that defendant Daronco wrongfully kept Luis Gutierrez in jail pending his sentencing on the crimes for which he was convicted. In finding the doctrine of judicial immunity to apply, the Court thus takes a broader view of the rule set down in *Stump* than did Judge Conner, by way of dictum, in *Cunningham v. Tonetti*, 78 Civ. 993(WWC), slip op. at 3 (S.D. N.Y. July 10, 1978).

the County Court of Westchester County during Luis Gutierrez' trial in March 1976. Defendant Alice Stewart was at that time employed as a court clerk in the same court. The amended complaint alleges that defendants Sagrati, McKay and Stewart, in concert with certain other defendants, altered the trial transcripts in order to prevent Luis Gutierrez from winning a new trial on appeal, and thus furthered a conspiracy to deprive plaintiffs of their civil rights. Amended Complaint at ¶ 20. The amended complaint also alleges that defendants Sagrati and Stewart, among others, tampered with evidence and altered exhibits during the trial, as part of the same conspiracy. *Id.* at ¶ 18.

These defendants move for dismissal of the amended complaint under Rule 12(b)(6). The amended complaint gives no hint of the substantive nature of the alterations and tampering allegedly done by these defendants, and does not indicate the dates on which this conduct allegedly occurred. Defendants urge that as a result the amended complaint is insufficient under the rule that a complaint in a § 1983 action must contain some allegations of facts indicating a deprivation of civil rights. *See Fine, supra,* 529 F.2d at 73; *Powell, supra,* 460 F.2d at 553.

 It is clear that under this rule a mere allegation of a successful conspiracy to deprive is insufficient to withstand a motion to dismiss. *See Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir. 1964). Here, however, the allegations of conspiracy are coupled with allegations of specific acts performed by defendants in furtherance of this conspiracy. Thus, while the complaint is hardly a model

of particularity and specificity in pleading, this is not a case where the complaint is utterly devoid of any factual allegations indicating a deprivation. *Cf. Holloway v. Carey,* 482 F.Supp. 551, 553–54 (S.D.N.Y. 1979); *Vulcan Society v. Fire Department of the City of White Plains,* 82 F.R.D. 379, 389 (S.D.N.Y.1979); *Amalgamated Clothing and Textile Workers Union v. J.P. Stevens & Co.,* 475 F.Supp. 482, 491 (S.D.N.Y. 1979). Accordingly, the Court is persuaded that liberal construction of the amended complaint is appropriate, *see Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686, and that the motion to dismiss on behalf of defendants McKay, Sagrati and Stewart should be denied.[5]

## C. Defendants Haviland and Lydon

Defendants Wallace Haviland and John Lydon were members of the Scarsdale Police Department during the time when the events described in the amended complaint occurred. The amended complaint alleges that on June 28, 1974 defendants Haviland and Lydon "destroyed exculpatory police records in the Scarsdale police offices," in furtherance of the above–described conspiracy. Amended Complaint at ¶ 16. The amended complaint contains no other allegations pertaining to these defendants.

 Defendants Haviland and Lydon move under Rule 12(b)(6) to dismiss the amended complaint on the alternative grounds that (1) the amended complaint fails to state a claim against either defendant, or (2) any action which plaintiffs may have is barred by the applicable statute of limitations. For reasons similar to these

---

**5.** Defendants argue that defendant Stewart is "clothed in judicial immunity," because her alleged conduct occurred in the performance of her ministerial duties as a clerk of the court. While some cases have held that court clerks enjoy absolute immunity for acts done in performance of their discretionary or quasi–judicial duties, *see, e. g., Denman v. Leedy,* 479 F.2d 1097, 1098 (6th Cir. 1973); *Glucksman v. Birns,* 398 F.Supp. 1343, 1353 (S.D.N.Y.1975), this rule does not extend to conduct relating to a court clerk's merely ministerial functions. *See, e. g., Allen v. Dorsey,* 463 F.Supp. 44, 47 (E.D. Pa. 1978); *Marty's Adult World of New*

*Britain, Inc. v. Guida,* 453 F.Supp. 810, 816 (D. Conn. 1978). Ministerial conduct enjoys only a qualified immunity which will be triggered if the court clerk shows that his or her conduct was done in good faith, pursuant to the lawful authority vested in him or her by the state. *See, e. g., McCray v. Maryland,* 456 F.2d 1, 3–5 (4th Cir. 1972). Defendant Stewart's duties were concededly ministerial; plaintiffs allege that defendant Stewart acted in bad faith. As a result, there is at present no ground for holding that defendant Stewart is immune from suit.

discussed above in regard to defendants McKay, Sagrati and Stewart, the Court is persuaded that the amended complaint alleges sufficient facts indicating a deprivation to withstand a Rule 12(b)(6) motion. The general charge of deprivation and conspiracy is coupled with a specific allegation that defendants Lydon and Haviland destroyed exculpatory material at a particular place on a particular date. True, the substantive nature of the allegedly exculpatory material is not disclosed, as it will certainly have to be if plaintiffs are ultimately to prevail against these defendants. But in the Court's view liberal construction of the complaint precludes dismissal on this ground.

The Court cannot agree with the contention that any claims which plaintiffs may have in respect of defendants Haviland and Lydon are time–barred. The

period of limitations for claims brought under the federal civil rights laws is derived from the most analogous state statute of limitations. *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Meyer v. Frank,* 550 F.2d 726, 728 (2d Cir.), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977). Since plaintiffs' § 1983 claim against these defendants is an action "to recover upon a liability . . . created or imposed by statute," it is governed by the three–year New York statute of limitations. N.Y.Civ.Prac.Law § 214(2) (McKinney Supp.1979); *see Leigh v. McGuire,* 613 F.2d 380, 382–83 (2d Cir. 1979); *Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir. 1978).[6]

This leaves the questions of when the limitations period began and whether the period expired before plaintiffs' action was

---

**6.** The Court is aware that the Supreme Court's recent decision in *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), has cast doubt on the validity of the rule applying the three–year period of N.Y.Civ.Prac.Law § 214(2) in § 1983 actions. The New York Court of Appeals has declared that "[s]tatutory provisions which provide only additional remedies or standing [but] do not create or impose new obligations" are not within the scope of § 214(2). *State v. Cortelle Corp.,* 38 N.Y.2d 83, 85, 378 N.Y.S.2d 654, 655, 341 N.E.2d 223, 224 (1975). In *Chapman,* the Supreme Court stated that § 1983 "does not provide any substantive rights at all" but merely furnishes a remedy for enforcement of federal constitutional rights, 441 U.S. at 618, raising the possibility that § 214(2), as interpreted in *Cortelle,* does not provide the correct limitations period for a § 1983 action. The court of appeals for this circuit has recognized the possibility but not ruled on the issue. *Singleton v. City of New York,* —— F.2d —— at —— No. 79–7628, slip op. at 5813 (2d Cir. Sept. 25, 1980). While a mechanically logical reading of *Chapman* and *Cortelle* could indeed support abandonment of the traditional reliance upon § 214(2), the likely result of such abandonment would be the advent of a bewildering array of different periods of limitations for different varieties of § 1983 actions. In the Court's view, the balance of the relevant policy considerations does not justify exacerbating the current confusion resulting from inter–state differences in § 1983 limitations periods by adopting a rule which will insure intra–state differentiation as well. *See* Note, *A Call for Uniformity: Statutes of Limitation in Federal*

*Civil Rights Actions,* 26 Wayne L.Rev. 61, 64–69 (1979). Continued reliance on § 214(2) is also supported by purely doctrinal considerations. A distinction can be drawn between rights and duties, on the one hand, and powers and liabilities on the other. Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning,* 23 Yale L.J. 16, 28–59 (1913); *see, e. g., Flast v. Cohen,* 392 U.S. 83, 116–33, 88 S.Ct. 1942, 1961–69, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting) (distinguishing, in context of taxpayer suits, between rights of taxpayer plaintiffs and power of such plaintiffs to bring suit to vindicate those rights). As the Court stated in *Chapman,* § 1983 does not confer any *rights* on individuals; nor does it impose any correlative *duties* on persons acting under color of state law. The rights and duties relevant to § 1983 are imposed by the Constitution or the substantive provisions of federal statutes. Instead, § 1983 gives individuals the *power* to maintain a civil action in federal court when such rights are violated, while at the same time imposing a *liability* on persons acting under color of state law for their failure to perform such duties. *Cortelle,* it will be remembered, rejected reference to § 214(2) only where the statute in question provides an *additional* mechanism for presenting a traditional cause of action. 378 N.Y.S.2d at 655–59, 341 N.E.2d at 224–27. Section 1983, however, created a new cause of action and imposed new liabilities on persons acting under color of state law. As a result, the decision of the New York Court of Appeals in *Cortelle* should not alter the applicability in § 1983 actions of the three–year limitations period provided by N.Y.Civ. Prac.Law § 214(2).

commenced. The gravamen of plaintiffs' claim is clearly the imprisonment of Luis Gutierrez subsequent to an allegedly unfair trial. Amended Complaint at ¶ 22. The cause of action thus arose on May 3, 1976, when Luis Gutierrez was sentenced to imprisonment. *Kaiser v. Cahn*, 510 F.2d 282, 285 (2d Cir. 1974); *see Martin v. Merola*, 532 F.2d 191, 195 n.7 (2d Cir. 1976).

▮▮▮▮ Plaintiffs filed their complaint in the present action on July 10, 1979, more than three years after the date when the cause of action accrued. In the Court's view, this fact does not require a finding that plaintiffs' action against these defendants is barred by the applicable statute of limitations. As mentioned above, plaintiffs commenced a similar action to the present one, based on the same alleged series of events, in this Court on May 2, 1979. This was one day before the expiration of the three–year period of limitations. The Court is of the opinion that the filing of the complaint in the first action tolled the statute of limitations. Rule 3, Fed.R.Civ.P.[7]

The Court's conclusion is not affected by the fact that the first action was subsequently dismissed without prejudice, pursuant to Rule 41(a)(2), Fed.R.Civ.P., by an order of this Court dated August 22, 1979. The Court is well aware that when an action is dismissed under Rule 41(a)(2), the situation is left as if the action had never been filed. *A. B. Dick Co. v. Marr*, 197 F.2d 498, 502 (2d Cir.), *cert. denied*, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952); *Wallace Clark & Co. v. Acheson Industries, Inc.*, 394 F.Supp. 393, 401 (S.D.N.Y.1975), *aff'd*, 532 F.2d 846 (2d Cir.), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). Thus, courts have usually held that the statute of limitations is not tolled by bringing an action that is later voluntarily dismissed. 5 Moore's Federal Practice ¶ 41.05[2], at 41–76–41–77 (2d ed. 1980); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2367, at 186–87 (1971); *see, e. g., Bunger v. United States Blind Stitch Machinery Corp.*, 8 F.R.D. 362 (S.D.N.Y.1948).[8] While the Court agrees that this should be the general rule, it is persuaded that a different result is called for here on the basis of factors unique to the present case.

The decision that the first complaint should be dismissed under Rule 41(a)(2) was made at a conference among the parties and the Court on August 17, 1979. At that time both complaints were pending before the Court. Since the two complaints were quite similar, it was concluded that the convenience of the parties and of the Court would best be served by dismissing one complaint under Rule 41(a)(2). Neither the Court nor the plaintiffs, who were then still appearing before the Court *pro se*, had any knowledge that dismissal of the first complaint instead of the second might create a statute of limitations problem. The policy behind the general rule that a complaint

---

**7.** The failure to serve Haviland and Lydon until after the expiration of the three–year period cannot affect this result, even though New York law provides that a claim is not interposed until the summons is served upon the defendant. *See* N.Y.Civ.Prac.Law § 203(b)(1) (McKinney 1972). The Supreme Court has recently reiterated the importance in § 1983 actions of adopting state tolling provisions where federal law provides no clear rule. *Board of Regents v. Tomanio*, 446 U.S. 478, 485·486, 100 S.Ct. 1790, 1795–96, 64 L.Ed. 2d 440 (1980). However, the Court has even more recently declined to disturb the rule applying Rule 3 as a tolling provision for a statute of limitations borrowed from state law, where the cause of action is, as under § 1983, based on federal law. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 n. 11, 100 S.Ct. 1978,

1985 n.11, 64 L.Ed.2d 659 (1980); *see Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533, 69 S.Ct. 1233, 1235, 93 L.Ed. 1520 (1949).

**8.** New York law generally allows a plaintiff who has timely filed an action to terminate that action and file a new one based on the same cause of action within six months regardless of whether the period of limitations has expired in the interim. N.Y.Civ.Prac.Law § 205(a) (McKinney 1972). However, by creating an exception to this result where the first action is terminated by a voluntary discontinuance, the New York rules impose the same result as that usually obtained in the federal context. *Id.; see* 4 J. Weinstein, H. Korn & A. Miller, New York Civil Practice ¶ 3217.10, at 32–359 (1979).

dismissed under Rule 41(a)(2) has no tolling effect is thus not significantly implicated in the present case. In the Court's view, the facts of the present case and the interests of justice require it to hold that the statute of limitations was tolled by plaintiffs' filing of the first complaint.[9] Plaintiffs' action against defendants Haviland and Lydon is thus not time–barred.

### D. Defendants Vergari, Corollo, Lindenbaum and Rakacky

Defendant Carl Vergari was, during the events described in the amended complaint, the District Attorney of Westchester County, State of New York. Defendants Frank Corollo, Sandford Lindenbaum and Joseph Rakacky were at these times each Assistant District Attorneys of Westchester County, State of New York. The amended complaint alleges that these defendants acted to further the above–described conspiracy. Specifically, it charges that Vergari and Lindenbaum, in combination with other defendants, made false statements prior to the trial of Luis Gutierrez which were reported in the press and were prejudicial to Luis Gutierrez' ability to receive a fair trial. Amended Complaint at ¶ 14.[10] The amended complaint alleges that defendant Corollo, among other defendants, tampered with evidence and altered exhibits during the trial of Luis Gutierrez. Id. at ¶ 18. It further alleges that defendant Rakacky participated in the conspiracy by altering the transcripts of Luis Gutierrez' trial in order to prevent him from winning a new trial on appeal. Id. at ¶ 20. Defendants Vergari, Lindenbaum, Corollo and Rakacky have moved for dismissal under Rule 12(b)(6), arguing principally that as public prosecutors they are immune from civil suits for damages under § 1983.

The starting point in any analysis of a question of prosecutorial immunity from a § 1983 suit must be the Supreme Court's recent decision in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In Imbler, the Court held that the relevant policy considerations "dictate[d] the same absolute immunity under § 1983 that the

9. The Court is fortified in its result by the absence of any apparent unfairness to the defendants. In the cases where courts have refused to hold that the statute of limitations was tolled by filing a timely complaint which was subsequently dismissed pursuant to Rule 41(a)(2), the second action was always brought *after* dismissal of the first action. Thus, in these cases there was always an interval, after the expiration of the period of limitations, during which no action was pending and the defendants may have justifiably relied on the repose provided by the statute of limitations. The refusal of these courts to allow the actions in question to be recommenced can thus be seen as an expression of the traditional concern that the court avoid exercising its discretion to grant a Rule 41(a)(2) dismissal in a manner prejudicial or unfair to the defendant. *See LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976). Here, however, the unusual situation exists that the second action was brought *before* the Rule 41(a)(2) dismissal of the first action. Thus, beginning on May 2, 1979, a day within the period of limitations, defendants have been continually on notice that plaintiffs were actively pursuing a claim against them. In the Court's view, then, no significant unfairness or prejudice to the defendants inheres in the decision to give the first complaint tolling effect. *See Leigh, supra*, 613

F.2d at 384. Any unfairness that does exist pales in relation to the alternative of denying a *pro se* plaintiff his day in court on the basis of a mechanical invocation of a rule of procedure, the existence of which plaintiff plainly was unaware and the applicability of which plaintiff could have easily avoided.

10. The amended complaint also alleges that defendants Vergari and Lindenbaum conspired "to avoid taking proper legal steps to regain property illegally seized from the plaintiff, Rosalie Gutierrez and acted to prevent the plaintiffs from appearing before the Grand Jury in regard to these matters." Amended Complaint at ' 15. In the Court's view, these allegations are too vague to withstand a Rule 12(b)(6) motion to dismiss. It will be remembered that the deprivation on which the complaint is founded concerns the imprisonment of Luis Gutierrez. Id. at ' 22. There is no apparent causal relationship between the alleged failure to return this property and Luis Gutierrez' incarceration. Standing by itself, this allegation is insufficient to make out a wholly distinct deprivation (presumably involving Rosalie Gutierrez' property) which might be cognizable under § 1983. In any event, the alleged conduct would appear to fall within the scope of the prosecutorial immunity discussed below.

prosecutor enjoys at common law" in spite of the fact that "this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Id.* at 427, 96 S.Ct. at 993. The only limit which the Court suggested might exist on this immunity concerns situations where the prosecutor acts in the role of investigator rather than advocate. *Id.* at 430–31, 96 S.Ct. at 994–95. However, the Court left no doubt that prosecutors are absolutely immune with respect to their activities, such as initiating a prosecution and presenting a case, which are intimately associated with the judicial phase of the criminal process. *Id.* *See also Butz v. Economou,* 438 U.S. 478, 516–17, 98 S.Ct. 2894, 2916, 57 L.Ed.2d 895 (1978).

After *Imbler,* then, the focal point of analysis is whether the questioned prosecutorial conduct was performed during the investigative phase of the criminal process. Conduct performed by a prosecutor during the judicial phase is absolutely immune from a § 1983 suit, even if it was improper or unlawful on its face.[11] *See, e. g., Heidleberg v. Hammer,* 577 F.2d 429, 432 (7th Cir. 1978) (finding immunity where complaint alleged prosecutors destroyed and falsified a line–up report and police tapes of incoming telephone calls).[12] In the present case, the amended complaint alleges that the defendant prosecutors made false pre–trial statements, tampered with evidence, and altered the trial transcripts. None of this alleged conduct was performed by the defendant prosecutors in the investigative

11. This test is applied by considering whether the harm allegedly suffered arose from the prosecution itself. *Lee v. Willins,* 617 F.2d 320, 322 (2d Cir. 1980). Here, the harm alleged is the wrongful imprisonment of Luis Gutierrez, which clearly resulted from his criminal prosecution. The alleged prosecutorial misconduct thus occurred in the judicial phase of the criminal process.

Traditionally, prosecutorial immunity protected only acts performed within the scope of a prosecutor's official duties. *Scolnick v. Lefkowitz,* 329 F.2d 716, 717 (2d Cir.), *cert. denied,* 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964). This limitation was applied by disregarding the purpose of the prosecutor's challenged conduct, and focusing instead on whether the conduct was by nature that which prosecutors perform in the normal exercise of their powers. *See Gregoire v. Biddle,* 177 F.2d 579, 580–81 (2d Cir. 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). Thus, in *Martin, supra,* 532 F.2d at 196–98, Judge Lumbard stated in a concurring opinion that a prosecutor *could be held liable in a § 1983 action for* releasing improper pretrial publicity, on a theory that such conduct is beyond the scope of the prosecutor's official duties. The Court views this dictum as inapplicable to the conduct alleged in the present case because of *Imbler's* subsequent affirmation of absolute prosecutorial immunity with respect to the judicial phase of the criminal process. In reaching this conclusion, the Court does not accept the reasoning expressed by the Seventh Circuit Court of Appeals in *Hampton v. Hanrahan,* 600 F.2d 600 (7th Cir. 1979). There, the court held that a prosecutor's post–arrest press conferences and television interviews are protected only by a qualified immunity. *Id.* at 633. The Seventh Circuit stated that *Imbler* did not expressly

deal with this issue, and that "no compelling justification [exists] for extending absolute immunity to [a prosecutor's public relations] decisions." *Id.* However, in *Butz, supra,* 438 U.S. at 483 n.5, 98 S.Ct. at 2899 n.5, one of the actions complained of was the defendant prosecutors' issuance of a deceptive press release. There the Court expressly reaffirmed its holding in *Imbler,* giving no indication that the immunity would not attach with respect to prosecutorial statements made to the press during the judicial phase of the criminal process. *Id.* at 508–17, 98 S.Ct. at 2912–16. Thus, on remand in *Butz,* the district court dismissed the plaintiff's constitutional claims as to the defendant prosecutors, including the claim based on the allegedly deceptive press release. *Economou v. Butz,* 466 F.Supp. 1351, 1359–60 (S.D.N.Y.1979).

12. In *Wilkinson v. Ellis,* 484 F.Supp. 1072, 1084–85 (E.D.Pa.1980), Judge Becker held, notwithstanding *Imbler* and the Seventh Circuit's decision in *Heidleberg,* that a prosecutor is not absolutely immune for the destruction of evidence, even where such destruction occurs in the judicial phase of the criminal process. While it may well be that the policy considerations which support prosecutorial immunity are not powerfully implicated where a prosecutor is charged with destroying evidence in the judicial phase of a criminal prosecution, the Court does not believe that *Imbler* gives this Court discretion to deny immunity in an individual case on this ground. Under *Imbler,* as elaborated in *Lee,* the sole inquiry for the Court is whether the alleged prosecutorial misconduct occurred in the judicial phase of the criminal process. See note 11 *supra.*

phase of the criminal process. As a result, defendants Vergari, Corollo, Lindenbaum and Rakacky are protected by the doctrine of prosecutorial immunity, and their motion to dismiss the amended complaint should be granted.

### E. Defendant Stix

■ Defendant Wayne Stix is, and was during the events described in the amended complaint, an attorney–at–law duly admitted to practice before the courts of the State of New York. The amended complaint makes the following allegation with respect to defendant Stix:

> Defendant WAYNE STIX was retained by plaintiffs LUIS GUTIERREZ and ROSALIE GUTIERREZ to represent ROSALIE GUTIERREZ in Greenberg Justice Court [sic] and accepted a retainer therefore but abandoned the plaintiff ROSALIE GUTIERREZ on the day of the trial and then filed a false sworn document with the Appellate Division concerning the matter in September, 1977.

Amended Complaint at ¶ 21. Defendant Stix moves pursuant to Rule 12(b)(6) to dismiss the amended complaint in respect of him.

It is fundamental that an action under § 1983 will lie only against a person acting under "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. The amended complaint, however, contains no allegation that defendant Stix was, at the time in question, a public official. Nor is there any suggestion that his alleged conduct was performed in concert with public officials. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970); *Russell v. Town of Mamaroneck*, 440 F.Supp. 607, 611 (S.D.N.Y.1977). The allegations contained in the amended complaint are thus insufficient to support a claim for relief against defendant Stix under § 1983. *See Fine, supra*, 529 F.2d at 73.

The motion to dismiss of defendant Stix should accordingly be granted.

### F. Defendant Greenspan

■ Defendant Leon Greenspan is, and was during the events described in the amended complaint, an attorney–at–law duly admitted to practice before the courts of the State of New York. The amended complaint, while listing Greenspan among the defendants in the caption, fails to make any allegations whatsoever with respect to Greenspan. Defendant Greenspan moves, under Rule 12(b)(6), to dismiss the action as to him. In view of the absence of any allegations in the amended complaint indicating the possibility of a § 1983 claim against Greenspan, this motion should be granted. *See Holloway, supra*, 482 F.Supp. at 553.

### Conclusion

Plaintiffs' motion for leave to serve and file an amended complaint is granted. The motions of defendants Daronco, Vergari, Corollo, Lindenbaum, Rakacky, Stix and Greenspan to dismiss the amended complaint as to them are granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. The similar motions of defendants Stewart, Sagrati, McKay, Haviland and Lydon are denied. Discovery is to be completed by January 15, 1981 and a pre–trial order filed by February 13, 1981.

It is so ordered.